[Civ. No. 26992. Second Dist., Div. Four. May 21, 1963.]

JOE TAYLOR, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ROBERT DAVID McKIERNAN, a Minor, etc., Respondents.

[Civ. No. 27052. Second Dist., Div. Four. May 21, 1963.]

SYLVESTER A. BYRNE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ROBERT DAVID McKIERNAN, a Minor, etc., Respondents.

(Consolidated Cases.)

Frederik W. Chel for Petitioners.

Everett A. Corten, Edward A. Sarkisian and Douglas H. Trowbridge for Respondents.

KINGSLEY, J.—The applicant, a newsboy, filed a claim for workman's compensation against the Herald and Mirror publishers, their insurance carriers, and the individual distributors of each paper.

Applicant was injured on April 28, 1961, when he fell off his bicycle while in the process of delivering both the Herald and Mirror newspapers along one route. At that time applicant was 14 years old. On February 8 of the same year, applicant acquired this newspaper route from the former delivery boy. In conjunction with obtaining this route, applicant received from the former delivery boy a route sheet, and a cloth bag in which to carry the papers, which bag had stamped upon it the name, "Herald-Express." Applicant carried both the Herald and Mirror in this cloth bag. The former delivery boy showed applicant where to deliver the papers and told him he would receive 50 cents profit for each subscription every month. Distribution of the two papers was done as a single delivery operation, that is, applicant would deliver in order by address and not deliver all of one paper before delivering the other.

Applicant received the necessary copies of the Herald from petitioner Byrne (a distributor for the Herald-Express), and

the necessary copies of the Mirror from petitioner Taylor (a distributor for the Mirror). Applicant made no prior arrangements with either distributor before taking over the route. Byrne first learned about applicant's acquisition of the route when he "dropped off" the necessary papers which applicant was to deliver to the home subscribers. Taylor first learned that applicant had taken over the route about one month after applicant began deliveries, when applicant informed Taylor that his payment check should have named him and not the former delivery boy as payee. Applicant never personally met Taylor until the hearing before the Industrial Accident Commission.

As to the Herald, it appears that applicant was charged for all papers delivered to him by Byrne. At the end of the month Byrne sent applicant a sheet of paper stating the amount which applicant owed Byrne for the papers delivered to him. Applicant would handle his own collections from the Herald subscribers (except for about nine subscribers) using a receipt book furnished by Byrne. The method used by applicant to raise the money to pay Byrne was quite varied. Applicant could (1) collect from all the subscribers of the Herald, then subtract from the total the amount he owed Byrne, and the difference he would keep as his profit, or (2) collect just what he owed Byrne, send that money in and then make other collections which he would keep as his profit, or (3) have his father make out a check for the amount owed to Byrne, and then keep all that he collected. From those collections he would reimburse his father for the amount of the check, and the difference he would keep as his profit. It was, however, incumbent upon applicant to make sure that all the subscribers paid, or else he would suffer the loss.

As for the Mirror, Taylor billed the Mirror subscribers directly, and virtually all of them mailed in their payments to Taylor. Applicant's profit on the Mirror would be the difference between what Taylor charged applicant for the papers and what the customers paid. Again, if a customer did not pay, applicant would suffer the loss.

Neither Byrne nor Taylor ever instructed applicant how to carry the papers, how to deliver the papers (except that deliveries had to be made before 6:30 p.m.), how to throw or porch the papers (although Byrne told applicant which subscribers wanted their papers porched), or what means of transportation to use in making the deliveries. In fact, applicant would use his own bicycle in making the deliveries. Applicant

unwired the papers when dropped off and folded each one putting a rubber band around them. The rubber bands were purchased from Byrne for $1.00 a box. On occasions applicant would have his younger brother or father help him in his deliveries.

Neither Byrne nor Taylor had any written contract of employment with applicant. However, Taylor testified at the hearing that he did have a written contract of employment with all but two or three of his carriers. Taylor testified further that he sent applicant a copy of this agreement for his signature, but applicant denied having ever received it. Taylor also testified that, although he had this written contract with his carriers, they could quit at any time. In addition, neither Byrne nor Taylor carried workmen's compensation insurance. However, Taylor testified that the written agreement he had with his carriers provided for a group medical plan for which the carriers paid $1.00 a month.

After applicant was injured, applicant's father notified both Byrne and Taylor that he and applicant's brother would deliver the papers for applicant until he recovered. No protest was made by Byrne or by Taylor.

In June 1961 applicant went on vacation and he asked a friend of his to handle the route for him until he returned. When applicant returned from vacation he told his friend that he could keep the route. No approval for this substitution was asked of either Byrne or Taylor.

Byrne had a written contract with the publisher (Hearst Publishing Company), and Taylor had a written contract with the Mirror publisher (Times-Mirror Enterprises). Byrne's contract was entitled "Allotment of Territory." It provided that Byrne, as dealer, would pay for the newspapers delivered to him at a fixed rate and would resell and deliver same to subscribers daily. The contract further provided that such sales would be in accordance with all conditions which may from time to time be imposed by the circulation department of the company's newspaper. Other provisions indicated that the paper kept rather comprehensive control and direction of things Byrne might or might not do as a dealer.

With respect to Taylor's contract with the Mirror, the contract contains a provision that Taylor is an independent contractor and not an agent or employee of the company. The dealer had the right to hire and pay all persons which he may desire to assist him in the sale and distribution of copies

of the Mirror. Taylor was also given the right to exercise the sole and exclusive control and supervision of all persons he hired for sale and distribution of the Mirror.

After hearing before the Industrial Accident Commission, the referee dismissed the claim against Byrne (the Herald distributor), the Mirror and its insurance carrier. Findings and award issued against Taylor (the Mirror distributor), the Herald and its insurance carrier. Thereupon, petitions for reconsideration were filed by Taylor, the Herald and its insurance carrier. Taylor's petition was denied and the petitions of the Herald and its insurance carrier were granted. Upon these petitions for reconsideration, the commission issued an amended opinion and order on November 21, 1962, against the two distributors, Byrne and Taylor, and dismissed the publishers and their insurance carriers. On November 30, 1962, the commission amended its decision by correcting two statements of fact referring to the Mirror and Taylor, its distributor. ■ Byrne, being for the first time aggrieved by the order of November 21st, had the right to make an application for reconsideration (*Brunau* v. *Industrial Acc. Com.* (1933) 135 Cal.App. 277 [26 P.2d 672]) which he filed on December 13, 1962. This petition was denied on January 3, 1963, on the ground it was untimely.

Applicant, and both Byrne and Taylor, filed petitions for writs of review with this court. We denied applicant's petition, deeming the commission's findings in favor of the two publishers to be within its jurisdiction. (2d Civ. 26995.) We granted review on the petitions of Byrne and of Taylor. Since the chief issue—that of applicant's status as an employee or as an independent contractor—is common to both cases, we deal with them in a single opinion.

I

■ However, with respect to Byrne's petition, it is necessary to determine the preliminary question of whether his petition for reconsideration was timely filed with the commission.

Labor Code section 5903 in part provides "At any time within 20 days *after the service* of any *final* order, . . . any person aggrieved thereby may petition for reconsideration. . . ." (Italics added.) Thus, under the statute it is the date of service, not the date of issuance, that is material. The commission considers the date of issuance to be the date of service. (See *Schumacher* v. *Industrial Acc. Com.* (1940)

5 C.C.C. 248; *Ricci* v. *Industrial Acc. Com.* (1959) 24 C.C.C. 10.) Under section 1013 of the Code of Civil Procedure, service by mail (the mode admittedly used by the commission) is complete on the date of mailing, although the 20-day time period is extended one day in such cases. It follows that, if service of the order was made prior to November 23, 1962, Byrne's petition for reconsideration was not filed in time.

Only one case appears to involve a similar situation. In *Associated Theatres, Inc.* v. *Industrial Acc. Com.* (1922) 57 Cal.App. 105, [206 P. 665], the commission issued an award in favor of the applicant against the employer, dismissing the carrier on the ground that the particular work was not covered by the insurance. The award issued on May 13, 1921, but the return did not show the date of service. On May 24 the applicant filed a petition for a supplemental award for physician's services. On June 13, he filed a petition for reconsideration (then called "rehearing") of the award in favor of the carrier. On the same day the employer also filed a petition for reconsideration, admitting that notice of award was received by it on May 16. On June 23, a supplemental award payable to the physician issued, and finally, on July 13, the employer filed a second petition for reconsideration. Held: The original order of May 13 was a final order within the meaning of the statute, and the petition of the employer filed on June 13 was too late for reconsideration of the order of May 13 (28 days after notice). However, the petition of the applicant for reconsideration filed on June 13 was timely because the record showed only that he had notice of the award on May 24 when he filed his petition for supplemental award, hence his petition was timely filed on the twentieth day after May 24.

Here, also, we have a question regarding service of notice of the award without any evidence on the matter. In fact, the return to the writ fails to show that Byrne was ever served with notice of the award of November 21, 1962. Counsel for the commission stated, in argument, that, because of the large volume of business before the commission, no affidavits of service were made; but that orders were dated as they were ready to be mailed out and that "in 99% of the cases," the service by mail was accomplished on the date of the order. We sympathize with the practical problems of a busy office, but those problems do not excuse a failure to make and to keep records which the law requires. We cannot presume that notice of the November 21st order was ever given to Byrne

until his admitted receipt of the November 30th correction. Here, as in *Associated Theatres, supra,* 57 Cal.App. 105, the 20-day period for filing a petition for reconsideration cannot be regarded as having commenced running until November 30, 1962. The petition filed on December 13, 1962, was, therefore, timely.

## II

The primary issue before this court is whether or not applicant was an "employee" within the meaning of the Labor Code, and therefore entitled to compensation from defendants pursuant to Labor Code section 3600.

The distributors assert that applicant was engaged in an occupation expressly excluded from workmen's compensation coverage by the terms of Labor Code section 3352, subdivision (b), and, in any event, that he was an independent contractor pursuant to Labor Code, section 3353. On the other hand, applicant asserts that he was an employee within the meaning of the code, and therefore within the scope of coverage of workmen's compensation.

 Labor Code section 3352, subdivision (b), provides that the term "employee" excludes: "(b) Any person engaged in vending, selling, offering for sale, or delivering directly to the public, any newspaper, magazine, or periodical *where the title thereto has passed to the person so engaged.*" (Italics added.) The commission determined that applicant did not come within the purview of this statute because he lacked capacity to contract, by reason of his minority, for personal property not in his immediate control or possession; and therefore, could not take title to the papers. For this conclusion the commission relied on Civil Code section 33, which states in part: "A minor cannot give a delegation of power, nor, under the age of eighteen, make a contract . . . *relating to any personal property not in his immediate possession or control.*" (Italics added.)

The commission's reliance on Civil Code section 33 for excluding applicant from the purview of Labor Code section 3352, subdivision (b), is misplaced. When Byrne and Taylor delivered the papers to applicant, they came under his immediate control and possession. Applicant folded and tied the papers. His delivery of the papers was in no way supervised or controlled by either Byrne or Taylor. Section 34 of the Civil Code states: "A minor may make any other contract than as above specified, in the same manner as an adult,

subject only to his power of disaffirmance. . . .'' Therefore, applicant certainly had the capacity to make a contract relating to the sale of the newspapers upon the facts presented to us.

To determine whether title passed from Byrne and Taylor to applicant as required by section 3352, subdivision (b), we examine the applicable legal principles from the law of sales. ■ It is well established that, where there is nothing indicating a contrary intent, the delivery of the possession of goods operates to pass title. (*Reiter* v. *Anderson* (1927) 87 Cal.App. 642, 649 [262 P. 415].) ■ This is true without regard to when the consideration is made payable. In the absence of some express agreement to that effect, payment of consideration is not a condition precedent to the passage of title. (*Lund* v. *Ganahl* (1913) 22 Cal.App. 103 [133 P. 501].) ■ Consequently, there was, each day, an outright sale of the papers at the time they were delivered to applicant and title to such papers passed upon such delivery. In the light of the testimony as to the ''at will'' character of the relations between applicant and the distributors, it is clear that each day's delivery of papers to applicant created a new obligation on his part to pay for them upon the agreed price. Title to the papers passed upon delivery to him. It follows that section 3352, subdivision (b), applies and that applicant is excluded from the application of the Workmen's Compensation Act.

■ Both Byrne and Taylor contend, also, that, even apart from section 3352, subdivision (b), applicant was, as a matter of law, an independent contractor within the meaning of section 3353 of the Labor Code.

All of the cases dealing with a newsboy's right to workmen's compensation were decided prior to the enactment of Labor Code section 3352, subdivision (c), in 1937 (now designated as section 3352, subdivision (b) ). It appears from the cases that it was established prior to that enactment that the usual relationship of a newsboy or a dealer with a publisher is that of an independent contractor if the newsboy or dealer receives no direct payment from the publisher and obtains his compensation only by purchase and resale of the papers. (*Call Publishing Co.* v. *Industrial Acc. Com.* (1928) 89 Cal.App. 194 [264 P. 300]; *Globe Indemnity Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 715 [284 P. 661]; *New York Indemnity Co.* v. *Industrial Acc. Com.* (1931) 213 Cal. 43 [1 P.2d 12]; *State Comp. Ins. Fund* v. *Industrial Acc.*

*Com.* (1932) 216 Cal. 351 [14 P.2d 306]; *Hartford A. & I. Co.* v. *Industrial Acc. Com.* (1932) 123 Cal.App. 151 [10 P.2d 1035]; *Associated Indemnity Corp.* v. *Industrial Acc. Com.* (1932) 128 Cal.App. 104 [16 P.2d 774]; *Bohanon* v. *James McClatchy Pub. Co.* (1936) 16 Cal.App.2d 188 [60 P. 2d 510]; *Batt* v. *San Diego Sun Pub. Co., Ltd.* (1937) 21 Cal.App.2d 429 [69 P.2d 216]; cf. *Bates* v. *Industrial Acc. Com.* (1958) 156 Cal.App.2d 713 [320 P.2d 167].)

Taking some of the factual elements in the case at bar for comparison with the elements stressed in the above reported decisions in holding one to be an independent contractor and not an employee, we find the following: (1) Neither Byrne nor Taylor carried workmen's compensation insurance; (2) applicant was not carried on the distributors' payroll or books as an employee; (3) applicant's route, route sheet and cloth bag were not obtained from the distributors; (4) applicant was never instructed how to dress, how to carry the papers, how to deliver the papers, how to throw or porch the papers, or what means to use in delivering the papers; (5) the applicant delivered competing papers; (6) the distributors never paid applicant any money, compensation or consideration; applicant's sole profit was derived from the difference between his purchase price and his sales price; (7) there was no fixed term of employment, applicant could terminate his employment, and the distributor could refuse to extend credit or sell papers at any time; (8) finally, applicant could work the route, or not, at will, engaging others to do his delivering.

██ It seems clear that Labor Code section 3352, subdivision (b), was intended to exclude all dealers and carriers who handle newspapers on a purchase and resale basis; and the case law holds that the right to control retained by publishers and dealers does not necessarily result in an employer-employee relationship. ██ This court concludes that title to the papers passed to applicant, and therefore, applicant is excluded from workmen's compensation by virtue of the provisions of Labor Code section 3352, subdivision (b). ██ We also hold that applicant was an independent contractor within the meaning of Labor Code section 3353. In light of the above holdings, the awards of the commission against Byrne and Taylor cannot stand.

In 2d Civ. 26992 the award is annulled; in 2d Civ. 27052 the order denying the petition for reconsideration is annulled

and the matter is remanded to the commission for further proceedings on that petition not inconsistent with this opinion.

Burke, P. J., and Jefferson, J., concurred.