[Crim. No. 5604. Fourth Dist., Div. Two. May 8, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
GENE RANDONO, Defendant and Appellant.

## COUNSEL

Leonard H. McBride for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Daniel J. Kremer and Harley D. Mayfield, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KERRIGAN, J.**—Defendant and Charles Dreyer were indicted on eleven (11) counts of grand theft (Pen. Code, §§ 484, 487) and one (1) count of attempted grand theft. Defendant's motion to dismiss the indictment (Pen. Code, § 995) was granted as to the attempt charge, and denied as to the others. He waived jury, was tried by the court, and convicted of 10 counts of grand theft. The court suspended imposition of sentence and granted probation for 3 years, on condition that defendant make full restitution and serve 90 days in the county jail. The jail term was stayed pending this appeal from the judgment (probation order).

### THE FACTS

Dreyer, testifying under a grant of immunity, was the prosecution's principal witness.

During 1968 and 1969 defendant and Dreyer were partners, operating a bar or restaurant in Newport Beach called Feliciano's. In April 1969, they purchased the Saddleback Inn, a motel, restaurant and bar in Laguna Beach. The Saddleback was then subject to various debts, including a first trust deed held by Laguna Federal Savings and Loan Association. Payments on the note secured by the trust deed, amounting to nearly $4,000 per month, were about 15 months delinquent.

During the first two weeks of July 1969, defendant and Dreyer discussed the Saddleback's precarious financial condition. The trust deed installments were still delinquent, Laguna Federal was pressing for payment, and other debts were due. Since bankruptcy or receivership seemed inevitable, they felt they might as well take advantage of the situation. They agreed to order some $20,000 worth of liquor for the Saddleback, then transfer it to Feliciano's without ever paying for it. There would never be any payment because there was no money left in the Saddleback Corporation.

Defendant ordered the liquor by telephone from the office at Feliciano's during the period July 15-25. The liquor, of a total value of $20,968.32, was delivered to the Saddleback Inn by eight distributors on July 22, 23, 24 and 30, 1969.[1]

The liquor was taken by car from the Saddleback to Feliciano's, where most of it was stored in an upstairs hallway and men's room. At defendant's direction, Alexander Torbitt, manager of Feliciano's, built a wall across the hallway to hide the liquor.

On Thursday, July 31, Laguna Federal obtained an ex parte order appointing a receiver for the inn. During the following weekend, defendant, with the help of his son and a U-Haul trailer, removed a large quantity of furniture from the Saddleback to his apartment. At midnight on Monday, August 4, Dreyer met the receiver at the Saddleback and turned over the keys and the books.

On September 12, 1969, Edward Banks, an investigator with the district attorney's office, went to Feliciano's with other officers to execute a search warrant. They kicked down the wall built by Torbitt and seized the liquor.[2]

## CONTENTIONS ON APPEAL

Defendant's main attack is directed to the sufficiency of the evidence to sustain the judgment of conviction. In particular, he contends that no false pretense was shown, and that Dreyer's testimony was not sufficiently corroborated. He also contends that application of the theft statute to his acts as shown by the evidence constitutes a denial of due process of law and that if the evidence shows any crime, it is concealment of assets to defraud creditors (Pen. Code, § 154), not grand theft.

---

[1]The parties stipulated that the liquor listed in the following table was delivered to Saddleback on the dates indicated.

| | Distributor | Invoice Number | Date | Cases | Value |
|---|---|---|---|---|---|
| Count I | The Milford Co. | 33609 | July 22 | 20 | $ 1,527.95 |
| II | The Milford Co. | 34736 | " 24 | 90 | 3,606.70 |
| III | Don W. Snyder Co. | 349769 | " 22 | 21 | 1,803.30 |
| IV | Don W. Snyder Co. | 350612, 350613 | " 30 | 78 | 4,105.00 |
| V | Sterling Liquor Co. | 06165 | " 23 | 16 | 1,296.28 |
| VI | The David Kay Co. | 22368 | " 23 | 15 | 1,171.80 |
| VII | Bohemian Distrib. Co. | 933621 | " 22 | 25 | 1,985.37 |
| VIII | Western Distrib. Co. | 580597 | " 22 | 25 | 2,055.30 |
| IX | Young's Market Co. | 32881 | " 23 | 14 | 1,070.82 |
| X | McKesson Liquor Co. | 23228 | " 22 | 25 | 2,014.70 |
| — | McKesson Liquor Co. | 23547 | " 24 | 5 | 331.10 |
| Total Cases and Value | | | | 334 | $20,968.32 |

The delivery by McKesson on July 24 was not charged in the indictment.

[2]The record does not show how much liquor was seized. The court ruled that the return to the search warrant, listing the liquor in detail, would be received into

## SUFFICIENCY OF THE EVIDENCE

■ An appellate court must assume in favor of the judgment the existence of every fact reasonably deducible from the evidence. Before the judgment may be set aside, it must appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court. It is the trier of fact, and not the appellate court, which must be persuaded of the defendant's guilt beyond a reasonable doubt. (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Caruso* (1959) 176 Cal.App.2d 272, 276 [1 Cal.Rptr. 428].)

The trial court specifically found that the defendant was guilty of theft by false pretenses. ■ To support a false pretenses conviction, it must be shown that the defendant made a false pretense or representation with intent to defraud the owner of his property, and that the owner was in fact defrauded, in that he relied on the false representation in parting with his property. (*People* v. *Ashley* (1954) 42 Cal.2d 246, 259 [267 P.2d 271], cert. den., 348 U.S. 900 [99 L.Ed. 707, 75 S.Ct. 222]; *People* v. *Brady* (1969) 275 Cal.App.2d 984, 996 [80 Cal.Rptr. 418].)

■ The Attorney General contends that the evidence also supports conviction of larceny by trick or device. We disagree. ■ Larceny by trick or device is the appropriation of property, the possession of which was fraudulently acquired; obtaining property by false pretenses is the fraudulent or deceitful acquisition of both title and possession. (*People* v. *Ashley, supra,* 42 Cal.2d 246, 258.) Where one is induced to sell property through another's false representations, if the seller intends to pass only possession at the time of sale, the buyer commits the offense of larceny by trick or device, but if the seller intends to pass title, the buyer commits the offense of obtaining property by false pretenses. (*People* v. *Nor Woods* (1951) 37 Cal.2d 584, 586 [233 P.2d 897].)

■ When there is nothing to establish a contrary intent, title to goods passes from seller to buyer on delivery, without regard to when payment is due. (Cal. U. Com. Code, § 2401, subd. (2); *Taylor* v. *Industrial Acc. Com.* (1963) 216 Cal.App.2d 466, 474 [30 Cal.Rptr. 877].) It is a misdemeanor for a liquor wholesaler to retain title to alcoholic beverages delivered to a retailer. (Bus. & Prof. Code, §§ 25503, subd. (a), 25617.)

---

evidence as past recollection recorded (see Evid. Code, § 1237), and denied a subsequent motion by defendant to strike. However, neither the return nor a copy was marked as an exhibit, nor was it read into evidence, and it is not part of the record on appeal.

■ In the absence of evidence to the contrary, we must presume that defendant's suppliers intended to obey the law (Civ. Code, § 3548) that is, to convey title to defendant or the Saddleback on delivery of the liquor. Consequently, the offense, if any, must have been theft by false pretenses.

■ If, as here, the conviction rests primarily on the testimony of a single witness (Dreyer) that the false pretense was made, the making of the pretense must be corroborated. (Pen. Code, § 1110; *People* v. *Ashley, supra,* 42 Cal.2d 246, 259.) The corroboration required by section 1110 is of the making of the pretense. (*People* v. *Beilfuss* (1943) 59 Cal.App.2d 83, 91-92 [138 P.2d 332], app. dism., 321 U.S. 746 [88 L.Ed. 1048, 64 S.Ct. 529].) The circumstances connected with the transaction, the entire conduct of the defendant, and his declarations to other persons may be looked to for the corroborative evidence contemplated by the law. (*People* v. *Martin* (1894) 102 Cal. 558, 565 [36 P. 952]; *People* v. *Frankfort* (1952) 114 Cal.App.2d 680, 701 [251 P.2d 401].)

Since Dreyer was defendant's accomplice in the crime, his testimony is also subject to the corroboration requirement of section 1111 of the Penal Code. The prosecution must produce independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime charged. (*People* v. *Perry* (1972) 7 Cal.3d 756, 769 [103 Cal.Rptr. 161, 499 P.2d 129].) ■ The corroborating evidence must do more than raise a conjecture or suspicion of guilt, but it need not be direct, nor extend to every detail of the accomplice's testimony or to every element of the crime. It may be circumstantial, and is sufficient, even though slight and entitled to little weight when standing alone, if it tends in some degree to implicate the defendant in such a way as reasonably may satisfy the trier of fact that the accomplice is telling the truth. (*Ibid.; People* v. *Henderson* (1949) 34 Cal.2d 340, 343 [209 P.2d 785]; *People* v. *Trujillo* (1948) 32 Cal.2d 105, 110-111 [194 P.2d 681], cert. den. *sub nom. Woodmansee* v. *California,* 335 U.S. 887 [93 L.Ed. 426, 69 S.Ct. 236].)

■ When viewed in the light of these principles, the evidence was more than sufficient to support defendant's conviction on all 10 counts of theft by false pretenses.

There is no dispute as to the element of actual fraud: It was stipulated that the distributors delivered the liquor to the Saddleback Inn. (see fn. 1, *supra.*) There was no evidence that the dealers were eventually paid or reimbursed, but their ultimate financial gain or loss is immaterial, as the victim's loss is not an element of the crime. (*People* v. *Brady, supra,* 275 Cal.App.2d 984, 995.)

■

■ Nor is there any question about the reliance element. Reliance may be inferred from all the cirmustances. *(Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 285-286 [19 Cal.Rptr. 1, 368 P.2d 529].) The only reasonable inference to be drawn from delivery of 334 cases of liquor under invoices marked with prices and terms of payment is that the dealers expected to be paid, and relied on that expectation in making the deliveries.

■ The false pretense may consist in any act, word, symbol, or token calculated and intended to deceive. It may be either express or implied from words or conduct. *(People* v. *Brady, supra,* 275 Cal.App.2d 984, 996; *People* v. *Mace* (1925) 71 Cal.App. 10, 21 [234 P. 841].) ■ The trial court adopted the prosecution's theory, that the false representations consisted of defendant's implied promises to pay for the ordered liquor, with the intention not to perform. Such a promise is a false or fraudulent representation or pretense within the meaning of section 484 of the Penal Code. *(People* v. *Weitz* (1954) 42 Cal.2d 338, 343 [267 P.2d 295], cert. den., 347 U.S. 993 [98 L.Ed. 1126, 74 S.Ct. 859]; *People* v. *Ashley, supra,* 42 Cal.2d 246, 262-265.)

■ An implied contract, the terms of which are manifested by conduct (Civ. Code, § 1621), arises from the request of one party (defendant) and performance by the other (the liquor distributors), though the request is often inferred from the circumstances attending the performance. *(Rebman* v. *San Gabriel V. L. & W. Co.* (1892) 95 Cal. 390, 393 [30 P. 564]; *City of Pasadena* v. *County of L. A.* (1953) 118 Cal.App.2d 497, 499 [258 P.2d 28].) The true implied contract consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words; whether a contract may be implied is a question of fact. *(Silva* v. *Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773, 774 [97 P.2d 798]; *City of Pasadena* v. *County of L. A., supra,* 118 Cal.App.2d 497, 500.)

■ Defendant ordered the liquor from wholesale suppliers. There is no evidence of any facts or circumstances that would suggest to any of the dealers that the orders were out of the ordinary. ■ When goods are ordered by one dealer from another in the ordinary course of business, the law will imply a promise to pay. "Where a contract makes no statement as to the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services or property is recoverable. Accordingly, where a person . . . furnishes property . . . for another at the other's request and there is no express agreement as to compensation, a promise to pay the reasonable value of the . . . property . . . may properly be implied where circumstances warrant." (17 Am.Jur.2d, Contracts, § 344,

p. 782. See also Civ. Code, §§ 1655, 1656; 3 Corbin, Contracts (1960), §§ 562, 568; 12 Cal.Jur.2d, Contracts, §§ 132, 133; 17A C.J.S., Contracts, § 328.)

██ California courts follow the objective theory of mutual assent under which the terms of a contract are established, not by the undisclosed intention of the promisor, but by such words or conduct as justify the promisee in understanding that the promisor intended to make a promise. (*Horacek* v. *Smith* (1948) 33 Cal.2d 186, 193-194 [199 P.2d 929]; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 30, p. 39.)

██ We hold that defendant's conduct in ordering and accepting the liquor was sufficient, under these principles, to constitute an implied promise to pay.[3]

The alternative is to suppose that the dealers intended the $20,000 worth of liquor as gifts. Any such presumption would fly in the face of reason and experience. The invoices, which include both price and terms of payment, contradict any inference of donative intent. Moreover, giving the liquor to defendant would have been an illegal act, which will not be presumed. (Bus. & Prof. Code, § 25503, subd. (b); Civ. Code, § 3548, *supra.*)

If the dealers had in fact agreed to provide the liquor free of charge, defendant could have subpoenaed them to testify. He did not. Since he presented no evidence of donative intent, the trial court could properly infer there was none. (*People* v. *Burns* (1969) 270 Cal.App.2d 238, 247 [75 Cal.Rptr. 688].)

██ Dreyer's testimony that defendant ordered the liquor is corroborated by the evidence of delivery and by the testimony of Mr. Palmer, office manager and credit manager of Young's Market Company, one of the defrauded distributors. (See fn. 1, *supra.*) Palmer testified that his previous dealings with the Saddleback Inn had been through Mr. Gelker, one of the former owners, but that he had dealt with defendant at Feliciano's. The invoice for the Saddleback order was marked C.O.D. When the liquor was delivered, someone called Mr. Palmer from the Saddleback and requested credit. Palmer refused. A few minutes later, defendant called, identified himself, said that he had taken over the Saddleback, and asked if the order could be on credit terms, citing his prior good record at Feliciano's. Palmer agreed to extend credit.

Palmer's testimony alone is sufficient to meet the corroboration requirements of both sections 1110 and 1111. The false representation that pay-

---

[3]Defendant's contention that our holding will lay businessmen open to criminal prosecution for ordinary commercial defaults was fully answered in *People* v. *Ashley, supra,* 42 Cal.2d 246, 262-265.

ment would be forthcoming may be implied from the request for credit. The elements of delivery and reliance were also corroborated by Palmer's testimony.

 Falsity of the representation and felonious intent are subsumed under defendant's intention not to pay for the liquor, which may be inferred from all the evidence. (*Perry* v. *Superior Court, supra,* 57 Cal.2d 276, 285; *People* v. *Brady, supra,* 275 Cal.App.2d 984, 996.)

Dreyer testified that he and defendant agreed to order the liquor and not to pay for it; that the liquor was removed from the Saddleback to Feliciano's and hidden behind a wall built for that purpose. His testimony was corroborated by three witnesses.

It was stipulated that Lyman Halbin would testify that on July 22, 1969, he delivered 20 cases of liquor from the Milford Company to a storeroom at the Saddleback, that there were then 70 cases of liquor in the storeroom, and that when he delivered 90 more cases on July 24, all the liquor he observed two days before was gone.

Palmer testified that about two weeks after delivering the liquor to the Saddleback, he learned of the receivership. He spoke to someone at the Saddleback who was taking an inventory for the court, and learned that no liquor was there. When he confronted defendant with this information and remarked that the liquor must have been removed or stolen because it could not have been used up in two weeks, defendant replied only that "it should be there."

Alexander Torbitt, manager of Feliciano's, testified that defendant told him people were looking for the liquor from the Saddleback Inn. Acting on defendant's orders, Torbitt built the wall across an upstairs hallway at Feliciano's to hide the liquor.

Defendant contends that Torbitt's testimony may not be considered in corroboration of Dreyer's because it constitutes admissions of defendant which must themselves be corroborated, and because Torbitt is an accomplice whose testimony may not be used to corroborate another accomplice.

 An admission of the defendant may not be considered by the trier of fact until the corpus delicti of the crime has been proved by prima facie evidence independent of the defendant's admissions. (*People* v. *Cullen* (1951) 37 Cal.2d 614, 624 [234 P.2d 1]; *People* v. *Ward* (1905) 145 Cal. 736, 739 [79 P. 448].) The required showing may be made by the uncorroborated testimony of an accomplice. (*People* v. *Lyons* (1958) 50 Cal.2d 245, 272 [324 P.2d 556].) Accordingly, Dreyer's testimony alone,

from which every element of the offense may be inferred, constituted sufficient foundation for receipt in evidence of defendant's admissions to Torbitt.

■ Although it is true that the testimony of one accomplice to a crime is not competent to corroborate that of another accomplice (*People* v. *Clapp* (1944) 24 Cal.2d 835, 837 [151 P.2d 237]; *People* v. *Creegan and Becker* (1898) 121 Cal. 554, 557 [53 P. 1082]), the rule is not applicable to Torbitt's testimony, because he was not subject to prosecution for the offense with which defendant was charged (Pen. Code, § 1111; *People* v. *Clapp, supra,* 24 Cal.2d 835, 838), even though he might have been liable for the crime of concealing assets to defraud creditors (Pen. Code, § 154), with which defendant was not charged, or as an accessory (Pen. Code, § 32) to the crime of theft. (See *People* v. *Scofield* (1971) 17 Cal.App.3d 1018, 1027 [95 Cal.Rptr. 405].)

■ Defendant's attempt to hide the liquor and his statements to Torbitt may be construed as admissions of guilt which supply the corroboration required by both section 1110 (*People* v. *Mason* (1948) 86 Cal.App. 2d 445, 449 [195 P.2d 60]) and section 1111. (*People* v. *Perry, supra,* 7 Cal.3d 756, 771.)

### APPLICABILITY OF THE THEFT STATUTE

■ Defendant contends that to construe section 484 of the Penal Code to include the facts of his case is contrary to the fair import of its terms and therefore a violation of section 4 of the Penal Code and a denial of due process of law.

Section 4 provides that all the provisions of the Penal Code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

Section 484 provides: "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, . . . is guilty of theft." Obviously, one of the objects of this section is to prevent fraud. Both the Penal Code (§ 489) and the interests of justice require that those who do defraud others of their property, as defendant did, should be punished.

Defendant's position is that to construe the words "representation or pretense" to include silence is counter to the fair import of those words. As a general proposition, this is true, but silence may under certain circum-

stances be a sufficient manifestation of acceptance to form a binding contract (1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 60, pp. 65-67), and silence where there is a legal duty to speak may be sufficient to constitute the false representation required by the statute. (1 Witkin, Cal. Crimes (1963) § 404, p. 376. See also *People* v. *Rocha* (1955) 130 Cal.App.2d 656, 660-661 [279 P.2d 836]; *People* v. *Mace, supra,* 71 Cal.App. 10, 21; Perkins, Criminal Law (1957) pp. 264-265; 32 Am.Jur. 2d, False Pretenses, § 17, p. 189.)

But defendant's false representation was not manifested by silence; it was manifested by his conduct in ordering the liquor. Nothing in section 484 requires that the false pretense be expressed in words; conduct is sufficient if it is calculated to mislead. (*People* v. *Brady, supra,* 275 Cal. App.2d 984, 996; *People* v. *Mace, supra,* 71 Cal.App. 10, 21.)

Section 1110 of the Penal Code provides that no one may be convicted of false pretenses "if the false pretense was expressed in language unaccompanied by a false token or writing," except when the pretense is evidenced by a writing or by two witnesses or by one witness and corroborating circumstances. Defendant argues that the words "expressed in language" preclude conviction where the pretense is expressed other than in language.

Section 1110 neither describes nor limits the offense, but only defines the minimum quantum of evidence required to prove one element of the offense. Far from imposing a requirement that the false pretense be expressed in words, we think an argument might be made that the phrase "expressed in language" limits the evidentiary requirements of section 1110 to those false pretenses which are expressed in words, exempting pretenses expressed by conduct. Be that as it may, section 1110 has been part of the law of this state for more than 100 years, and so far as we are aware, it has not been suggested before this that the section was intended by the Legislature to change the long-established rule that false pretenses may be manifested by conduct. (See, in addition to authorities cited, *supra,* 1 Witkin, Cal. Crimes (1963) § 404, p. 376; Perkins, Criminal Law (1957) p. 253; Miller, Handbook of Criminal Law (1934) § 119, p. 386.)

### CONCEALING ASSETS TO DEFRAUD CREDITORS

Defendant also challenges his conviction on the ground that the conduct with which he is charged is punishable under section 154 of the Penal Code, which therefore preempts the general theft statute, section 484. This contention is without merit.

■ Where a general statute includes the same subject matter as a special statute and those statutes are in conflict, the special statute will be treated as an exception to the general statute, whether passed before or after the general enactment; a defendant cannot be prosecuted under a general statute where a special statute covers the same activity; conversely, a special statute does not supplant a general statute unless all the requirements of the general statute are covered in the special statute. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479-480 [82 Cal.Rptr. 724, 462 P.2d 580]; *People* v. *Phillips* (1966) 64 Cal.2d 574, 581-582 [51 Cal.Rptr. 225, 414 P.2d 353]; *People* v. *Lustman* (1970) 13 Cal.App.3d 278, 285-287 [91 Cal.Rptr. 548], cert. den., 405 U.S. 932 [30 L.Ed.2d 807, 92 S.Ct. 989].)

■ Section 154 provides for punishment of "[e]very debtor who fraudulently . . . conceals his property with intent to defraud, hinder or delay his creditors . . . ." Conviction of theft by false pretenses under section 484 requires proof of four elements: (1) intent to defraud, (2) false pretenses, (3) actual fraud, and (4) the victim's reliance. Only the first of these elements is found in section 154.

The evidence would have supported a conviction under section 154 if defendant had been charged with violation of that section, but that does not preclude his conviction of the separate and distinct offense of grand theft by false pretenses.

The judgment of conviction (order granting probation) is affirmed.

Kaufman, Acting P. J., and Tamura, J., concurred.

A petition for a rehearing was denied May 30, 1973, and appellant's petition for a hearing by the Supreme Court was denied July 6, 1973.