**Frans THERON, Plaintiff–Appellant,**

v.

**UNITED STATES MARSHAL,
Defendant–Appellee.**

**No. 86–5741.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1987.

Decided Nov. 10, 1987.

Rodney M. Perlman, Los Angeles, Cal., for plaintiff-appellant.

Steven Mansfield, Los Angeles, Cal., for defendant-appellee.

Before WALLACE, HALL and LEAVY, Circuit Judges.

WALLACE, Circuit Judge:

At the conclusion of extradition proceedings before a United States magistrate, Theron was found extraditable to South Africa on sixteen counts in an indictment. The district court denied Theron's petition for habeas corpus. Theron timely appealed. The magistrate had jurisdiction pursuant to 18 U.S.C. § 3184, and the district court had jurisdiction pursuant to 28 U.S.C. § 2241(a). We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

## I

On April 27, 1979, a sixteen count indictment was filed in a South African court against Theron. Count one charged Theron with fraud, and alternatively both with theft and with obtaining credit while an adjudicated insolvent without advising the creditor of the insolvency. Counts two through twelve charged Theron with fraud, and alternatively with theft, for participating in a check-kiting scheme. Counts thirteen through fifteen charged Theron with fraud, and alternatively with obtaining credit while an adjudicated insolvent without advising the creditor of the insolvency. Count sixteen charged Theron with contracting for a debt without any reasonable expectation of being able to discharge the debt. A magistrate in Cape Town issued a warrant for Theron's arrest on these charges on April 30, 1979. Theron, however, had left the country on April 28, 1979.

On September 15, 1981, the South Africa government filed a second indictment. The second indictment's first fifteen counts corresponded with counts one through fifteen of the first indictment. Count sixteen of the first indictment became count seventeen of the second indictment. In addition, the second indictment contained a new count, count sixteen, which charged Theron with fraud for obtaining a rental car by misrepresentation.

On September 8, 1982, the Ambassador of the Republic of South Africa to the United States sent a diplomatic note to the United States Secretary of State formally requesting Theron's extradition pursuant to the Treaty on Extradition between the United States of America and the Union of South Africa. Treaty of Extradition, Dec. 18, 1947, United States–South Africa, 2 U.S.T. 884, T.I.A.S. No. 2243 (Treaty). On July 15, 1983, the United States filed a complaint and requested an arrest warrant for Theron, who was residing in Orange County, California. Theron was promptly arrested, arraigned before a United States magistrate, and released on his own recognizance.

The magistrate determined that Theron was extraditable on counts one through fifteen of the first indictment, but that there was insufficient evidence as to count sixteen of the first indictment (count seventeen of the second indictment) and therefore Theron was not extraditable on that charge. The magistrate also found that Theron was extraditable on count sixteen of the second indictment.

Theron petitioned for a writ of habeas corpus. The district court denied the petition. Theron timely appealed.

■ In reviewing an extradition order on a petition for habeas corpus, our role is strictly limited. We only review to determine (1) whether the extradition court had jurisdiction over the proceedings and the fugitive, (2) whether the offense charged is within the valid and enforceable extradition treaty, and (3) whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty. *Artukovic v. Rison,* 784 F.2d 1354, 1355–56 (9th Cir.1986) *(Artukovic), citing Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925). In conducting this review, findings of fact are reviewed under a "clearly erroneous" standard, *Quinn v. Robinson,* 783 F.2d 776, 791 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986), and legal questions are reviewed de novo. *Kamrin v. United States,* 725 F.2d 1225, 1227 (9th Cir.) *(Kamrin), cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984).

On appeal, Theron raises issues involving only the second and third areas of our judicial review. First, he contends, for a variety of reasons, that the offenses charged are not within the extradition treaty. Second, he contends that there was insufficient evidence warranting the finding that there was a reasonable ground to believe that he was guilty.

## II

■ Two principles govern the determination of whether a charge in the indictment is within a treaty: dual criminality and speciality. First, under the principle of dual criminality, no offense is extraditable

unless it is a crime in both the requesting country and the country from which extradition is requested. *Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir.1981) (*Caplan*). Article 5 of the Treaty expressly incorporates dual criminality:

> The extradition shall not take place if the crime or offence is not indictable in the place where the person claimed is apprehended or if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

Treaty, 2 U.S.T. 884, 889–90, T.I.A.S. No. 2243.

■ In assessing dual criminality, courts examine "similar [criminal] provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of states." *Caplan*, 649 F.2d at 1344 n. 16, *quoting Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir.1981). Dual criminality does not require that an offense in a foreign country have an identical counterpart under the laws of the United States. *Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922). Rather, dual criminality exists if the "essential character" of the acts criminalized by the laws of each country are the same and if the laws are "substantially analogous." *Wright v. Henkel*, 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903) *(Wright); see also Factor v. Laubenheimer*, 290 U.S. 276, 300, 54 S.Ct. 191, 198, 78 L.Ed. 315 (1933).

Second, the principle of speciality limits prosecution in the requesting country to those offenses that the asylum country has found to be extraditable. *Caplan*, 649 F.2d at 1343. Article 7 expressly incorporates the principle of speciality:

> A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High Contracting Party to whom the surrender has been made for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place, until he has been restored, or has had an opportunity of returning, to the territories of the High Contracting Party by whom he has been surrendered.

Treaty, 2 U.S.T. 884, 890, T.I.A.S. No. 2243.

Thus, as to each charge in the indictment, we must determine whether the principles of dual criminality and speciality are met. South Africa can only prosecute Theron for extraditable offenses. *See Caplan*, 649 F.2d at 1343. Because Theron was arrested in California, we will first evaluate the laws of the United States and then, if necessary, the laws of California.

### A.

Theron asserts that each count of the indictment fails to meet the principle of dual criminality. Count one charged him with fraud and alternatively both with obtaining credit while an adjudicated insolvent without advising the creditor of the insolvency and with theft. Theron had obtained and used an overdraft line of credit on his checking account without disclosing that he was an adjudicated insolvent.

The magistrate concluded that the dual criminality requirement was satisfied by 18 U.S.C. § 1014, 18 U.S.C. § 2113(b), and California Penal Code § 484(a). Because this is a conclusion of law, we review it de novo. *Kamrin*, 725 F.2d at 1227.

18 U.S.C. § 1014 provides that whoever knowingly makes any false statement or report for the purpose of influencing in any way the action of credit unions or banks insured by the federal government upon any application or advance shall be fined not more than $5,000 or imprisoned not more than two years or both. On appeal, Theron has argued that the South African law is much broader than section 1014; therefore, he concludes that dual criminality is not present.

■ The essential elements of bank fraud under section 1014 are that the defendant made false statements to the bank, that he did so to influence the bank's action, and that the defendant knowingly made the false statement as to a material

fact. *See United States v. Bonnette*, 663 F.2d 495, 497 (4th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 666 (1982). A statement concerns a material fact when the statement has the capacity to influence the lending institution. *United States v. Braverman*, 522 F.2d 218, 223 (7th Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975). A loan applicant's failure to disclose the full extent of his liabilities can form the basis of liability under section 1014. *See Robinson v. United States*, 345 F.2d 1007, 1009–10 (10th Cir.), *cert. denied*, 382 U.S. 839, 86 S.Ct. 87, 15 L.Ed.2d 81 (1965).

■ South Africa's law criminalizes an adjudicated insolvent's failure to disclose his insolvency when obtaining credit. Theron's nondisclosure of his insolvency to the bank in South Africa in order to obtain credit is generally the same character as acts punishable under section 1014 and South Africa's law is substantially analogous to bank fraud under section 1014. Admittedly, South Africa's law is broader than section 1014, but both laws can be used to punish the failure to disclose a loan applicant's liabilities to a bank when obtaining credit. Theron's argument ignores that for purposes of dual criminality, it is immaterial that South Africa's law is broader than the analogous law in this country. *See Kelly v. Griffin*, 241 U.S. 6, 13–14, 36 S.Ct. 487, 489, 60 L.Ed. 861 (1916).

■ Counts two through twelve charged Theron with fraud, and alternatively with theft, for participating in a check-kiting scheme. The magistrate concluded that the dual criminality requirement is satisfied by 18 U.S.C. § 2113(b) and Cal.Penal Code § 484.

Section 2113(b) provides a basis for satisfying the dual criminality requirement. It penalizes the taking and carrying away, with intent to steal or purloin, any money exceeding $100 belonging to or in the custody of a bank. The United States can prosecute individuals for check-kiting under section 2113(b). *See United States v. Sterley*, 764 F.2d 530, 531 (8th Cir.) (per

curiam), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 544, 88 L.Ed.2d 473 (1985).

Theron's participation in the check-kiting scheme in South Africa is generally the same character as acts criminalized by section 2113(b) and the South Africa law is substantially analogous to bank larceny in violation of that section. Each count alleges that Theron deposited worthless checks in his bank account and induced his bank to pay those checks. Thus, section 2113(b) satisfies the dual criminality requirement for the charges in counts two through twelve.

Counts thirteen through fifteen charged Theron with fraud, and alternatively with obtaining credit, while an adjudicated insolvent without advising the creditors. Count thirteen alleges that Theron fraudulently failed to disclose his insolvency to a gasoline company when arranging to purchase gasoline on credit and did in fact purchase gasoline on credit and fail to pay. Count fourteen alleges that Theron engaged in similar conduct when arranging to purchase, and in fact purchasing, films from a local merchant. Count fifteen alleges that Theron engaged in similar conduct in arranging to purchase, and in fact purchasing, a film company. Theron contends that counts thirteen through fifteen are noncriminal commercial defaults. The magistrate concluded that section 484(a) of the California Penal Code satisfied the dual criminality requirement for each count.

Section 484(a) is California's general theft statute. This section makes it a crime for a person "knowingly and designedly, by any false or fraudulent representation or pretense, [to] defraud any other person of money...." "The false pretense may consist in any act, word, symbol, or token calculated and intended to deceive. It may be either express or implied from words or conduct." *People v. Randono*, 32 Cal.App.3d 164, 174, 108 Cal.Rptr. 326 (1973). Silence may constitute a false pretense where there is a duty to speak. *Id.* at 177–78, 108 Cal.Rptr. 326.

■ Theron's failure to disclose his insolvency to his creditors is generally the same character as acts condemned under section

484(a) and South African law is substantially analogous to that section. South African law imposed an affirmative duty on Theron to inform his creditors that he was an adjudicated insolvent. The law seems to have been designed to prevent adjudicated insolvents from failing to disclose their insolvency, obtaining credit, and failing to pay. In addition, section 484(a) criminalizes the failure to disclose information where one has a duty to speak and one thereby knowingly obtains money or property by false pretenses. The laws are sufficiently analogous. Thus, section 484(a) satisfies the dual criminality requirement for counts thirteen through fifteen.

Count sixteen of the second indictment charges Theron with fraud and alleges that Theron misrepresented that he was employed by Lon Laboratories to a rental car agency in order to obtain a rental car. When the rental car agency billed Theron's alleged employer, as Theron had requested, the agency discovered that Theron had been fired from his job one month before renting the car. The magistrate concluded that section 484(a) of the California Penal Code satisfied the dual criminality requirement for count sixteen.

As discussed earlier, section 484(a) is California's general theft statute. It criminalizes knowingly using a false or fraudulent pretense to defraud another person of money or property. Our dual criminality discussion pertaining to counts thirteen through fifteen is equally applicable here.

Theron's affirmative misrepresentation in order to obtain the automobile is generally the same character as the conduct punishable under section 484(a), and South African law punishing fraud is substantially analogous to section 484(a). The common law crime of fraud in South Africa consists of unlawfully making, with intent to defraud, a misrepresentation which causes actual prejudice to another. Thus, section 484(a) satisfies the dual criminality requirement for count sixteen of the second indictment.

## B.

The principle of speciality is implicated by Theron's arguments that the charges against him are time-barred. First, he argues that we should apply California's three year statute of limitations instead of the federal five year statute of limitations to counts one through fifteen. *Compare* Cal. Penal Code § 801 (West 1985) *with* 18 U.S.C. § 3282. Because the 1979 indictment alleges that Theron committed the offenses discussed in counts one through fifteen between January and November 1975, Theron argues the charges are time-barred. Article 5 of the Treaty provides, in part, that the "extradition shall not take place ... if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to." Treaty, 2 U.S.T. 884, 889–90, T.I.A.S. No. 2243.

The principle of speciality, defined earlier, requires that we examine each charge within the indictment to ensure that the charges are not time-barred because the requesting country can only prosecute those offenses that the asylum country has found extraditable. *See Caplan,* 649 F.2d at 1343. If a charge is barred by the statute of limitations, then a defendant is not extraditable on that charge.

The circuit courts that have addressed the issue have applied the federal statute of limitations in extradition cases where treaties exist. *See United States v. Kraiselburd,* 786 F.2d 1395, 1397 (9th Cir. 1986); *In re Assarsson,* 670 F.2d 722, 725 (7th Cir.1982); *Jhirad v. Ferrandina,* 536 F.2d 478, 480 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). This follows because the United States is the contracting party to the treaties, not the individual states. Adopting this reasoning, we conclude that counts one through fifteen are not time-barred because South Africa issued the indictment that charged Theron with counts one through fifteen in 1979 for offenses that allegedly occurred in 1975.

In Theron's argument about this issue, which involves the principle of speciality, he injects the principle of dual criminality and contends that the state statute of limitations prevents extradition. He contends that at least as to counts thirteen through fifteen—in which dual criminality was based on an analogous state offense, not on an analogous federal offense—the three year limitation must apply. Theron argues that under California law, the statute of limitations is an element of the crime. *People v. Rehman*, 62 Cal.2d 135, 139, 41 Cal. Rptr. 457, 396 P.2d 916 (a complaint barred by the statute of limitation fails to state an offense), *cert. denied*, 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342 (1964); *People v. McGee*, 1 Cal.2d 611, 613, 36 P.2d 378 (1934) (statute of limitations is a matter going to jurisdiction). Therefore, Theron concludes that if the charge is time-barred in California, dual criminality is lacking, and, indeed, speciality is also wanting.

Theron's argument that we should evaluate the state statute of limitations in assessing dual criminality for offenses based on an analogous state offense is novel. However, the suggestion blurs the necessarily distinct analysis of dual criminality and speciality under the statute of limitations. Dual criminality focuses on the conduct made criminal in the requesting country and the asylum country. Dual criminality exists if the acts criminalized are of generally the same character and if the laws are substantially analogous. *Wright*, 190 U.S. at 58, 23 S.Ct. at 785. The focus of the analogy between the laws is on the conduct that the law criminalizes, not statute of limitations.

Moreover, the separate clauses in Article 5 of the Treaty demonstrate that the inquiry concerning dual criminality and the statute of limitations is distinct. The first clause states that "[t]he extradition shall not take place if the crime or offence is not indictable in the place where the person is apprehended." The second clause then states that "if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to," then extradition shall not take place. Treaty, 2 U.S.T. 884, 889–90, T.I.A.S. No. 2243. The first clause concerns dual criminality and focuses on the conduct that the law criminalizes. The second clause establishes the federal statute of limitations as the appropriate statute of limitations even for state offenses because the United States is undeniably the "High Contracting Party" referred to in Article 5. Thus, we apply the five year statute of limitations. Once these separate processes are completed, it would be inappropriate to jettison the reasoning by allowing a state statute of limitations to apply under the dual criminality part of the analysis.

Theron argues, however, that even if the federal statute of limitations applies to counts one through fifteen, the counts are time-barred because six years lapsed between the time the offenses allegedly occurred and the 1981 indictment. Moreover, Theron contends that because the 1981 indictment accompanied South Africa's formal extradition request and because South Africa has never formally requested extradition on the 1979 indictment, the extradition request as to counts one through fifteen must be time-barred.

South Africa prepared the 1981 indictment in connection with its extradition request. The South African government merely incorporated the 1979 indictment into the 1981 indictment. The 1981 indictment expressly restated the charges from the 1979 indictment. Theron argues that we should engage in an in-depth inquiry into South African criminal procedure and declare that South Africa improperly incorporated the 1979 indictment into the 1981 indictment. He then contends that such an inquiry will lead us to conclude that since the 1981 indictment was defective and since South Africa has not requested extradition on the 1979 indictment, the extradition request as to counts one through fifteen of the 1981 indictment must fail. We conclude that it would be inappropriate to engage in such an inquiry into the formal procedure a country uses in instituting

prosecution. *See In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir.1980) (refusing to engage in such an inquiry out of respect for the sovereignty of another nation) *(Assarsson), cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981). The 1979 indictment was issued within the applicable statute of limitation. The 1981 indictment expressly incorporates the charges from the 1979 indictment. The 1981 indictment is not barred by the five year statute of limitations.

### C.

Theron next contends that the fraud charges, contained in counts one through sixteen, against him are not extraditable offenses because "common law fraud" is not encompassed in the Treaty. Instead, Theron contends, the Treaty limited extraditable fraud by specifically stating the types of individuals who could be charged with fraud. Theron then concludes that he is not in that limited list.

We must determine whether common law fraud is encompassed by the Treaty because under the doctrine of speciality, the fugitive may only be tried in the requesting country for the charges determined to be extraditable in the asylum country. *See United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987). As pointed out earlier, Article 7 of the Treaty expressly incorporates the doctrine of speciality.

Article 3 lists the crimes or offenses that are reciprocally indictable under the Treaty. Paragraph 22 deals with fraud. Article 3 states that "[e]xtradition shall be reciprocally granted for the following crimes or offences: [f]raud by a bailee, banker, agent, factor, trustee, director, member or officer of any company, or the obtaining of money, valuable security or other property by false pretences." Treaty, 2 U.S.T. 884, 886–88, T.I.A.S. No. 2243. Theron's argument concerning the limited list of individuals who could be extraditable for fraud ignores that the second clause concerning obtaining money or property by false pre-

tenses does not limit the types of individuals who can be charged. This "false pretenses" clause of Article 3(22) incorporates common law fraud, which South Africa defines as "the unlawful making, with intent to defraud, a misrepresentation which causes actual prejudice or which is potentially prejudicial to another." Thus, common law fraud in South Africa is extraditable under the Treaty.

Theron does not and cannot challenge his extraditability for theft or for violating South Africa's Insolvency Act. Article 3(20) of the Treaty expressly includes theft as an extraditable offense and Article 3(26) expressly includes contravention of the "insolvency laws" as an extraditable offense. 2 U.S.T. 884, 888, T.I.A.S. No. 2243.

We conclude that the charge within each of counts one through sixteen of the 1981 indictment are within the Treaty.

### III

Because the extradition court had jurisdiction over the proceedings and the fugitive and because we have concluded that the offenses charged are within the Treaty, we next must turn to the third prong of our analysis and determine if there was any evidence warranting the determination that there was reasonable or probable cause to believe Theron guilty. *Artukovic*, 784 F.2d at 1356. Article 8 of the Treaty provides:

> The extradition shall take place only if the evidence be found sufficient, according to the laws of the High Contracting Party applied to, either to justify the committal of the prisoner for trial, in case the crime or offence had been committed in the territory of such High Contracting Party....

Treaty, 2 U.S.T. 884, 891, T.I.A.S. No. 2243. In essence, Article 8 requires the magistrate to determine whether there was reasonable or probable cause to believe the accused guilty in the extradition hearing. The magistrate found sufficient evidence for each charge in counts one through six-

teen of the second indictment. Theron contends that the magistrate erred as to each count. His argument is essentially two-fold. He argues first that the affidavits were insufficient and, in addition, that necessary documents should not have been considered by the magistrate because they were improperly authenticated.

### A.

Theron's appeal on this issue must fail if there is *"any* evidence of probable cause." *Artukovic*, 784 F.2d at 1356 (emphasis in original). Probable cause exists as to count one, the bank fraud count. The affidavit of Fourie, the manager of the victim bank, states that the bank extended credit to Theron and that Theron failed to disclose his insolvency. Fourie states that he would not have extended credit to Theron had he known Theron was an adjudicated insolvent. Fourie's statement establishes that the bank relied on Theron's misrepresentation. Fourie's affidavit provides sufficient evidence to support a finding of probable cause.

Probable cause also exists as to counts two through twelve, the check-kiting counts. Theron boldly contends that the affidavits fail to establish his criminal intent at the time he deposited the checks. In support of his sweeping proposition, Theron points to one ambiguous statement of Clark, one of the individuals whom Theron solicited to write worthless checks. Clark's statements, however, indicate that she told him that her checking account did not have sufficient funds, and, therefore, Theron should not deposit the check. He did anyway. Moreover, affidavits of numerous other individuals from whom Theron solicited worthless checks establish probable cause that Theron had the requisite intent for each of these counts. Each affidavit describes Theron's solicitation of a check or checks, Theron being informed that the check was worthless, and Theron depositing the check anyway. These affidavits provide sufficient evidence to support a finding of probable cause.

Probable cause also exists for counts thirteen through fifteen, the defrauding merchants counts. Again, Theron contends that he lacked criminal intent and that the charges are nothing more than commercial defaults. The affidavits of the merchants, however, establish Theron's failure to disclose his insolvency when obtaining credit and his subsequent failure to pay for goods received on credit. All three merchants indicated that they would not have extended credit to Theron if they had known he was insolvent. Failure to disclose material facts where the defendant has a duty to do so is sufficient for criminal liability for theft by false pretenses.

Probable cause also exists for count sixteen, the defrauding the rental car agency count. Theron once more contends that he lacked criminal intent, but the affidavits demonstrate otherwise. Although Lon Laboratories expressly informed Theron that he had no power to charge items to the company while employed there and although Lon Laboratories fired Theron a month before he rented the car, Theron told the rental agent to bill Lon Laboratories. Because of the misrepresentation, Theron was given the car without the requirement of a deposit or the production of a credit card.

### B.

Theron also contends that the record presented to the court failed to include properly authenticated documents. His argument is that the statements of the Attorney General for the Cape of Good Hope, which explain the South African laws under which Theron was charged, were not properly certified. Additionally, he contends that the "Precis" of the South African investigating police officer, which supplies factual summaries of the charges and the supporting evidentiary documents, were not properly certified. Absent properly certified documents, Theron contends that the magistrate should not have ordered extradition.

18 U.S.C. § 3190 governs the admissibility of evidence in extradition hearings and states:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Certification of the United States diplomatic officials is "conclusive proof" that the documents are properly and legally authenticated and therefore admissible. *Assarsson*, 635 F.2d at 1245–46.

 The United States Ambassador to South Africa certified the documents in dispute. The certification is conclusive; therefore, the evidence was admissible at the extradition hearing.

### IV

We conclude that Theron can be extradited on each charge contained in counts one through sixteen of the 1981 indictment. The district court's order denying Theron's petition for a writ of habeas corpus is affirmed.

AFFIRMED.