**David Lee CLAREY, Petitioner–Appellant,**

v.

**Stephen S. GREGG, U.S. Marshall for the Southern District of California, Respondent–Appellee.**

**No. 96–55193.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1997.

Decided March 9, 1998.

Benjamin L. Coleman, Federal Public Defender, San Diego, CA, for appellant.

Sara Criscitelli, Assistant United States Attorney, San Francisco, CA, for appellee.

Before: CANBY, Jr. and THOMPSON, Circuit Judges, and MOLLOY,* District Judge.

CANBY, Circuit Judge:

David Lee Clarey challenges his extradition to Mexico on murder charges. He contends that his extradition would violate the doctrine of dual criminality and that it is barred by the analogous United States statute of limitations. We affirm the denial of his habeas corpus petition.

## BACKGROUND

According to Mexican judicial authorities, Clarey beat and robbed James Bishop in Guanajuato, Mexico on September 25, 1986. Bishop died of his injuries three weeks later. On November 4, 1986, a Mexican First Instance Criminal Court issued a warrant charging Clarey with simple homicide as proscribed by Article 201 of the Guanajuato Penal Code. On June 2, 1995, Mexico filed a request for Clarey's extradition in the United States District Court for the Southern District of California. An arrest warrant was issued that day and Clarey was arrested one week later.

The magistrate judge held a two day hearing and ordered Clarey extradited to Mexico. Clarey challenged the extradition order by filing a petition for writ of habeas corpus in the district court. See Bozilov v. Seifert, 983 F.2d 140, 142 (9th Cir.1992) (extradition order unappealable and subject to challenge only by habeas corpus). The district court denied Clarey's petition, and he appeals.

## DISCUSSION

■ We review de novo questions of the interpretation of an extradition treaty. United States v. Merit, 962 F.2d 917, 919 (9th Cir.1992).

### 1. Dual Criminality

■ "Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and re-

questing nations." United States v. Saccoccia, 18 F.3d 795, 800 n. 6 (9th Cir.1994). The doctrine is incorporated into the Extradition Treaty Between the United States and Mexico at Article II, §§ 1, 3.

Both the magistrate judge and district court found that the requirement of dual criminality is met in this case because Clarey's acts, which constitute simple homicide in Mexico, would constitute felony murder in the United States. Felony murder is "murder ... committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery." 18 U.S.C. § 1111.

Clarey argues that dual criminality has not been established because the statute under which he has been charged in Mexico criminalizes a much broader range of conduct than does the United States felony murder statute. Mexico charged Clarey with simple homicide, which Article 201 of the Guanajuato Penal Code defines as occurring "when one takes another person's life." [E.R.305] Clarey argues that the United States and Mexican statutes are not "substantially analogous," see Theron v. United States Marshal, 832 F.2d 492, 496 (9th Cir.1987), because the United States statute requires that the homicide be perpetrated during the commission of a violent felony, while Mexican law requires only that a homicide occur.

■ Clarey's challenge overstates the degree to which the applicable criminal laws of the two countries must be "substantially analogous." Although some analogy is required, see United States v. Khan, 993 F.2d 1368, 1372 (9th Cir.1993) (Pakistani law of conspiracy not sufficiently analogous to United States' separate crime of using a telephone to facilitate a drug offense), differences between statutes aimed at the same category of conduct do not defeat dual criminality. That is apparent from an examination of Theron, upon which Clarey relies. Theron held that a South African statute, which criminalized the failure of an adjudicated insolvent to disclose his insolvency when obtaining credit, was sufficiently analogous to 18 U.S.C. § 1014, which criminalized

* The Honorable Donald W. Molloy, District Judge      for Montana, sitting by designation.

false statements to a bank. The opinion stated:

> Admittedly, South Africa's law is broader than section 1014, but both laws can be used to punish the failure to disclose a loan applicant's liabilities to a bank when obtaining credit. Theron's argument ignores that for purposes of dual criminality, it is immaterial that South Africa's law is broader than the analogous law in this country.

*Theron*, 832 F.2d at 497. Here, too, Mexico's homicide statute and the United States statute can both be used to punish the acts with which Clarey is charged-causing the death of Bishop by beating him during a robbery. The two laws are analogous because they both punish acts of the same general character-the taking of another's life; no more is required. *See Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1404–05 & n. 2 (9th Cir.1988). The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical. "[W]hen 'the laws of both the requesting and the requested party appear to be directed to the same basic evil,' *Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973), the statutes are substantially analogous, and can form the basis of dual criminality." *Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir.1989); *see also In re Russell*, 789 F.2d 801, 803 (9th Cir.1986) (upholding extradition for conspiracy even though overt act was not required in requesting nation because request alleged several overt acts); *cf. Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 470–71, 66 L.Ed. 956 (1922) ("The law does not require that the . . . scope of [criminal] liability be coextensive, or in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.")

> [T]he district court found that:

> the evidence that was presented to the magistrate is that the victim was bound and gagged, that there is sufficient evidence to indicate that a robbery took place,

since the car was stolen and other things, and that the person took off and left Mr. Bishop for dead. . . .

> [U]nder the facts and evidence that was submitted to [the Magistrate Judge], I find that the elements of felony murder are met.

Clarey does not challenge these findings on appeal. Because his conduct qualifies as felony murder under United States law, his extradition satisfies the requirement of dual criminality.

### 2. Limitations

■ Clarey next asserts that extraditing him would violate the limitations requirements embodied in the United States–Mexico treaty at Article 7. That Article provides that "[e]xtradition shall not be granted when the prosecution . . . for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party." United States/Mexico Extradition Treaty, Art. 7, 31 U.S.T. 5059, TIAS 9659 (1978); *see Theron*, 832 F.2d 492 at 496, 498. Clarey claims that the statute of limitations for his analogous United States offense has lapsed.[1]

There is no statute of limitations for felony murder. *See* 18 U.S.C. § 3281. Clarey's prosecution for that offense is therefore not time-barred. Clarey argues, however, that instead of looking to the statute of limitations for the offense with which he could have been charged in the United States, we should focus on the federal crime that is most similar to the offense with which he was charged in Mexico. He concludes that Guanajuato's "simple homicide" most closely resembles the United States offense of manslaughter, which has a five year statute of limitations that he contends has run.

We reject Clarey's argument. Again, Clarey seeks to shift the focus of inquiry from the nature of his conduct to the Mexican statute being applied to that conduct. As we interpret the Treaty, however, the "offense" for which extradition is being

---

1. Clarey does not argue that his offense with which he is charged in Mexico is barred by limitations under Mexican law.

 

sought is the murder of Bishop in the course of a robbery. From the point of view of the United States, that offense is felony murder, for which there is no limitation. The object of Article 7 of the Treaty is to preclude extradition of a person whose prosecution in the United States would offend our national statute of limitations if he had committed his criminal conduct here.

Our decision in *Theron* is consistent with this conclusion. In *Theron*, three counts in the requesting country's indictment alleged failure to disclose insolvent status in obtaining credit, and a fourth count alleged fraud in misrepresenting employment status in obtaining credit. For purposes of dual criminality, we analogized these counts to the California statute criminalizing theft. *Theron*, 832 F.2d at 497–98. Theron then argued that the state three-year statute of limitations should apply, rather than the federal five-year statute for noncapital offenses. We rejected that contention because the treaty required application of the statute of limitations of the requested *party*, which was the United States. We held that the treaty required application of "the federal statute of limitations *even for state offenses* because the United States" is the contracting party. *Theron*, 832 F.2d at 499 (emphasis added). We did not apply the federal limitation directly to the foreign offense, nor to some offense that we deemed comparable for limitations purposes; we applied it to the state offenses that we had found to be analogous in light of the conduct actually charged. We do the same here. Because Clarey's conduct qualifies as felony murder, and that offense has no statute of limitations, the limitations requirement of the treaty is met.[2]

### 3. Constitutionality of the Extradition Statute, 18 U.S.C. § 3184

In his appellate briefs, Clarey also challenged the constitutionality of the statute that authorizes his extradition, 18 U.S.C. § 3184. He contended that it allows executive revision of Article III final judgments in contravention of *Hayburn's Case*, 2 U.S.(2

Dall.) 408, 1 L.Ed. 436 (1792). As his counsel acknowledged at oral argument, however, this circuit has now resolved that issue adversely to Clarey. *See Lopez–Smith v. Hood*, 121 F.3d 1322, 1327 (9th Cir.1997) (rejecting *Hayburn's Case* challenge to executive discretion over extradition) (relying on *Lo Duca v. United States*, 93 F.3d 1100 (2nd Cir.1996)); *see also DeSilva v. DiLeonardi*, 125 F.3d 1110 (7th Cir.1997). *Lopez–Smith* controls our disposition of this question.

### 4. Conclusion

The denial of Clarey's petition for a writ of habeas corpus is **AFFIRMED**.

---

**2.** Our disposition of this issue makes it unnecessary for us to address the government's alternative contention, raised for the first time on appeal, that Mexico effectively initiated criminal

proceedings by judicial issuance of the arrest warrant on November 4, 1986, well within even a five-year limitation.