In the Matter of the EXTRADITION OF Gabriel Alfredo VALDEZ–MAINERO.

No. 97MG1529–CGA.

United States District Court, S.D. California.

May 8, 1998.

**CERTIFICATION OF EXTRADIT-
ABILITY AND ORDER OF
COMMITMENT**

AARON, United States Magistrate Judge.

This is a proceeding under 18 U.S.C. § 3184 pursuant to a request by the Republic of Mexico for the extradition from the United States to Mexico of Gabriel Alfredo Valdez–Mainero, under the provisions of the Extradition Treaty Between the United States of America and the United Mexican States, May 4, 1978 ("Treaty").

**I.**

*Procedural History and Factual
Background*

On February 4, 1997, the Judge of the Fourth District Court for the State of Baja, California, Mexico issued an arrest warrant for Gabriel Alfredo Valdez–Mainero for the crime of Illegally Bringing into the Country a Firearm Reserved for the Exclusive Use of the Mexican Army, Navy, and Air Force.

The Mexican Court's summary of the evidence upon which the court relied in issuing the arrest warrant for Valdez, as set forth in documents which accompanied the Formal Request for Extradition,[1] indicate that in 1993, Mexican law enforcement agents executed a search warrant at Valdez's home, located at Calle Hipodromo number 11, Colonia Hipodromo, Tijuana, Baja California, Mexico. During the search, law enforcement agents found a number of firearms, including a nine millimeter semiautomatic pistol. At the time of the search, Valdez gave a statement in which he admitted that the pistol belonged to him. Valdez said that he had purchased the pistol in the United States at a weapons shop in National City approximately one and one-half years earlier, and that he bought the pistol for his own protection. Valdez also stated that he was an amateur pistol shooter in California. He admitted that he brought the pistol into Mexico in his vehicle without having obtained authorization from government authorities to do so.[2]

· Alana M. Wong, Asst. U.S. Atty., San Diego, CA, for U.S.

Michael Pancer, San Diego, CA, for Gabriel Alfredo Valdez–Mainero.

---

1. A Formal Request for Extradition was filed on August 22, 1997, by the United States Attorney's Office for the Southern District of California, on behalf of the Republic of Mexico.

2. During subsequent court proceedings in Mexi-

In addition to the record of the search of Valdez's residence and his statements, the Mexican Court had before it a Bureau of Alcohol, Tobacco and Firearms document entitled, "Firearms Transaction Record," showing that on June 16, 1992, Gabriel Valdez–Mainero purchased, in the United States, a nine millimeter pistol with the same serial number as the pistol found during the search of Valdez's residence in Tijuana. Based upon this evidence, the Mexican Court issued an arrest warrant for Valdez for the crime of Illegally Bringing Into the Country a Firearm Reserved for the Exclusive Use of the Mexican Army, Navy and Air Force.

On June 16, 1997, the United States Attorney for the Southern District of California filed a *Complaint for Provisional Arrest with a View Toward Extradition* against Gabriel Alfredo Valdez–Mainero on behalf of the Republic of Mexico. The *Complaint* contained a recitation of the underlying facts of the criminal charges, alleged that the offense with which Valdez was charged was an extraditable offense under the extradition treaty between the United States and Mexico, and stated that Valdez was located within the City of San Diego.

This Court issued an arrest warrant for Valdez based upon the allegations in the *Complaint for Provisional Arrest.* He was arrested on June 17, 1997, and made his first appearance in this matter on June 18, 1997. On August 22, 1997, the government filed a Formal Request for Extradition, on behalf of the Republic of Mexico. On September 26, 1997, Valdez filed a *Motion re: Detainee's Response to Extradition Request,*[3] together with a memorandum of points and authorities, in which he opposed the request for extradition. The United States Attorney's Office filed a *Response and Opposition to Detainee's Opposition to Extradition Request* on October 10, 1997. Valdez filed a *Reply to Government's Response re: Extradition* on October 22, 1997, and the United States Attorney's Office filed a *Response and*

*Opposition to Detainee's Reply to the Government's Response re: Extradition* on November 7, 1997.

This Court held the first of two hearings regarding legal challenges to the extradition request on November 13, 1997. On December 12, 1997, the government filed *Supplemental Points and Authorities in Support of Extradition Request,* and a *Submission of Supplemental Documents in Support of Extradition Request.* On January 8, 1998, Valdez filed a *Reply to Government's Supplemental Points and Authorities in Support of Extradition Request.* On February 23, 1998, this Court held the second and final substantive hearing in this case.

## II.

### *Discussion*

#### A. *Requirements for Extradition*

■ The Republic of Mexico seeks to extradite Valdez from the United States to Mexico to face a charge of illegally bringing into Mexico firearms reserved for the exclusive use of the military. Because the executive branch of government is charged with conducting foreign relations, the role of this Court in extradition proceedings is limited. *Sabatier v. Dabrowski,* 586 F.2d 866, 869 (1st Cir.1978) (citing *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925)); *Shapiro v. Secretary of State,* 499 F.2d 527, 531 (D.C.Cir.1974), *aff'd on other grounds,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). The purpose of the extradition hearing is not to determine guilt or innocence, but rather, to determine that,

1.  There exists a valid extradition treaty between the United States and the requesting state;

2.  The relator is the person sought;

3.  The offense charged is extraditable;

4.  The offense charged satisfies the requirement of double criminality;

---

co, Valdez disavowed the statement he made at the time of the search, saying that he had signed the statement because he had been threatened, and felt pressured to do so. Valdez told the Mexican Court that he had purchased the pistol from a cab driver in Tijuana.

3.  Although Valdez is described as "detainee" in this pleading, he was released on bond on August 12, 1997.

5. There is "probable cause" to believe the relator committed the offense charged;

6. The documents required are presented in accordance with United States law, subject to any specific treaty requirements, translated and duly authenticated by a United States consul; and

7. Other treaty requirements and statutory procedures are followed.

M. Bassiouni, *International Extradition: United States Law and Practice,* Ch. IX § 5.1 (3d ed.1996).

■ The only issue in dispute in this case is whether the offense charged satisfies the requirement of "double criminality," more commonly referred to as "dual criminality." *Transcript of Extradition Hearing,* November 13, 1997 at p. 1.[4] This doctrine holds that an offense is extraditable only if the acts charged are criminal by the laws of both countries. *Collins v. Loisel,* 259 U.S. 309, 311, 42 S.Ct. 469, 66 L.Ed. 956 (1922).

## B. *Dual Criminality*

### 1. *The Treaty Requirement*

The dual criminality requirement of the treaty between the United States and Mexico is set forth in Article 2, Sections 1 and 3 of the Treaty. Those sections provide,

1. Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

   .     .     .     .     .     .

3. Extradition shall also be granted for wilful acts which, although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties, by a deprivation of liberty. the maximum of which shall not be less than one year.

Thus, in order for this Court to certify Valdez for extradition, the Court must find either that the offense with which Valdez is charged in Mexico is listed in the Appendix to the Treaty and is punishable by incarceration for a term of up to at least one year, or that the act alleged, although not listed in the Appendix, is punishable by both the United States and Mexico by incarceration for a term of up to at least one year.

■ Documents filed with the Formal Request for Extradition state that the offense of Illegally Bringing into the Country a Firearm Reserved for the Exclusive Use of the Mexican Army, Navy and Air Force is "covered and punishable" under Article 84, Section 1 of the Mexican Federal Law on Firearms and Explosives; that the conduct attributed to Valdez is punishable by the laws of both the United States and Mexico by imprisonment for more than one year; and that the offense in question is also included in item 19 of the Appendix to the Treaty. However, these assertions are not controlling. "Determination of whether a crime is within the provisions of an extradition treaty is within the sole purview of the requested state ." *United States v. Van Cauwenberghe,* 827 F.2d 424, 429 (9th Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (citing *Johnson v. Browne,* 205 U.S. 309, 316, 27 S.Ct. 539, 51 L.Ed. 816 (1907), and *McGann v. U.S. Board of Parole,* 488 F.2d 39, 40 (3d Cir. 1973) (per curiam), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1974, 40 L.Ed.2d 309 (1974)).

### 2. *The Requirements of the Dual Criminality Doctrine*

In *Collins v. Loisel,* 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1922), the Supreme Court

---

**4.** In his opposition to the extradition request and at the November 13, 1997 hearing, Valdez raised the possibility that he was arrested in order to give authorities an advantage in extradition proceedings pending at that time, in this district, against his brother, Emilio Valdez. In this regard, Gabriel Valdez argues that Mexican authorities could have arrested him in Mexico at any time, claiming that at the time of his arrest he had been in the United States for only two weeks, and that prior to coming to the United States, he had been living "openly" at his residence in Tijuana and going to his office in Tijuana every day. *Notice of Motion and Motion re: Detainee's Response to Extradition Request* at p. 2; *Transcript of Bail Hearing, July 1, 1997,* at p. 13. This Court will not address these allegations since they are not properly the subject of this proceeding.

held that in order to satisfy the requiremer.t of dual criminality,

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

*Id.* at 312, 42 S.Ct. 469.

Citing *Collins,* some courts have held that the dual criminality doctrine requires *only* that the act alleged to have been committed constitute a crime in both countries. In *Emami v. United States District Court,* 834 F.2d 1444 (9th Cir.1987), the Court of Appeals for the Ninth Circuit asserted, "It is well established that all the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions." *Id.* at 1450. Similarly, in *Bozilov v. Seifert,* 983 F.2d 140 (9th Cir.1992), the Court stated,

> "Dual criminality does not require that an offense in a foreign country have an identical counterpart under the laws of the United States." Dual criminality requires only that the acts alleged constitute a crime in both jurisdictions. Each state may name and penalize the crime differently.

*Id.* at 142 (citations omitted) (quoting in part, *Theron v. United States Marshal,* 832 F.2d 492, 496 (9th Cir.1987), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988), and citing *Emami,* 834 F.2d at 1450). In another case, the Court of Appeals for the Ninth Circuit stated, "[E]ach element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is enough that the conduct involved is criminal in both countries." *Oen Yin–Choy v. Robinson,* 858 F.2d 1400, 1404–05 (9th Cir.

1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989) (quoting *In re Russell,* 789 F.2d 801, 803 (9th Cir.1986)).

However, in a number of cases, courts have implied that in order to satisfy the dual criminality requirement, more is required than that the act charged constitute a crime in both countries. Relying on Supreme Court precedent, the Court of Appeals for the Ninth Circuit has held that in order to satisfy the dual criminality requirement, the "essential character" of the acts criminalized by the laws of both countries must be the same, and that the laws of the two countries must be "substantially analogous." *Oen Yin–Choy,* 858 F.2d at 1404 (citing *Theron,* 832 F.2d at 496 (quoting *Wright v. Henkel,* 190 U.S. 40, 58, 23 S.Ct. 781, 47 L.Ed. 948 (1903))).

In his *Motion re: Detainee's Response to Extradition Request,* Valdez contends that bringing into Mexico a product "exclusively reserved for the military" fails the dual criminality test because there is no criminal statute in the United States that prohibits the "same conduct." *Id.* at p. 6. In Valdez's view, an essential element of the "conduct" charged is that the firearm involved is one reserved for exclusive use by the military. *Reply to Government's Response re: Extradition,* at p. 6. He argues that because there is no such prohibition under United States law, the extradition request must be denied.

In its *Response and Opposition to Detainee's Opposition to Extradition Request,* the government maintains that Valdez's conduct is proscribed in Mexico by Article 84, Section I of the Federal Law of Firearms and Explosives, and that the same conduct is proscribed in the United States by 18 U.S.C. §§ 922(*l*) and 924(a)(1)(C), and by 26 U.S.C. § 5844.[5]

---

**5.** According to documents filed by the government in its *Submission of Supplemental Documents in Support of Extradition Request,* Article 84, Section I of the Mexican Federal Law of Firearms and Explosives provides,

**Article 84.** An imprisonment penalty of 5 to 30 years shall be imposed and a fine from 20 to 500 days of minimum wage:

  I.  Whomever illegally brings into the Republic unlicensed firearms, munitions, explosives or any other material for the exclusive

use of the Armed Forces or that are controlled under this Law, likewise to whomever participates in bringing into the Republic the above.

**18 U.S.C. § 922(1)** provides in relevant part,

(1) Except as provided in section 925(d) of this chapter, it shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition.

The government asserted, "Sections 922(*l*) and 5844 are strict prohibitions on the importation of weapons into the United States with narrow exceptions ... If Valdez had brought the same nine-millimeter pistol into the United States, he would be in violation of [these sections]." *Id.* at p. 6.

Relying on *Collins* and other cases cited above, the government argued that the "deciding factor" is not that the United States does not have a statute specifically prohibiting bringing in firearms reserved for military use, but rather, that the alleged conduct—which the government defines as bringing into the country an unauthorized firearm—constitutes a crime in both countries. The government concluded, "Because importing a nine-millimeter pistol without proper authorization is a crime in both Mexico and the United States, the dual criminality requirement has been satisfied and Valdez' motion should be denied." *Id.*

### C. The Dual Criminality Requirement is Met

In his *Reply to Government's Response re: Extradition,* Valdez raises a number of arguments as to why the dual criminality requirement is not met in this case. Each of his points is addressed below.

#### 1. The Crime is Listed in the Appendix to the Treaty

█ The Appendix to the Treaty lists specific offenses which the United States and Mexico have agreed are extraditable. Item

**18 U.S.C. § 924(a)(1)(C),** the penalty statute for § 922(*l*), provides,
> (a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—
> (C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(*l*) ... shall be fined under this title, imprisoned not more than five years, or both.

**26 U.S.C. § 5844** provides,
> No firearm shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes, under regulations as may be prescribed by the Secretary, that the firearm to be imported or brought in is—

number 19 reads, "Offenses against the laws relating to prohibited weapons, and the control of firearms, ammunition, explosives, incendiary devices or nuclear materials."

The government asserts in its *"Response and Opposition to Detainee's Opposition to Extradition Request"* that item number 19 of the Appendix includes the offense of Illegally Bringing into the Country a Firearm Reserved for the Exclusive Use of the Mexican Army, Navy and Air Force. Valdez maintains that this crime is not listed in the Appendix, arguing that the offense is not covered by item number 19 of the Appendix because item 19 contains no reference to things reserved exclusively for the military. *Reply to Government's Response re: Extradition,* at p. 2.

The Court finds that item number 19 of the Appendix to the Treaty includes the offense for which Mexico seeks to extradite Valdez. Item 19 encompasses, by its terms, *all* offenses "relating to prohibited weapons, and the control of firearms." Article 84, Section I of the Mexican Federal Law on Firearms and Explosives is clearly a "law relating to prohibited weapons, and the control of firearms."

#### 2. The Exception Set Forth in 18 U.S.C. § 925(d)(1) is Inapplicable

Valdez observes that 18 U.S.C. § 922(*l*) prohibits "certain importation" of firearms, and points out that this statute specifically refers to exceptions set forth in § 925(d). He further notes that one exception,

> (1) being imported or brought in for the use of the United States or any department, independent establishment, or agency thereof or any State or possession or any political subdivision thereof; or
> (2) being imported or brought in for scientific or research purposes; or
> (3) being imported or brought in solely for testing or use as a model by a registered manufacturer or solely for use as a sample by a registered importer or registered dealer;
> except that, the Secretary may permit the conditional importation or bringing in of a firearm for examination and testing in connection with classifying the firearm.

§ 925(d)(1), applies to firearms and ammunition "for use in connection with competition." [6]

Valdez argues that documents filed with the extradition request indicate that he is an "amateur pistol shooter," and that this constitutes affirmative evidence establishing that his conduct would fall within an exception to the United States statute that makes it a crime to import a firearm. Valdez concludes that his conduct would therefore not be a crime in the United States, and maintains that the government must rebut this evidence and prove that the exception does not apply in order to show that the dual criminality requirement has been met. *Reply to Government's Response re: Extradition*, at p. 5.

In response to this argument, the government notes that § 925(d) provides that in certain circumstances, the Secretary of the Treasury shall authorize importation of a firearm, and maintains that Valdez would not qualify for any of the exceptions because they apply only when the person bringing in the firearm obtains the authorization of the Secretary in advance of the importation. The government notes that Valdez does not contend that he obtained permission from any governmental authority before taking the firearm in question into Mexico, and argues that for these reasons, his act would constitute a crime in the United States. [7]

The government further argues that even assuming that Valdez did not have to obtain governmental authorization in order to fall

within the exception in § 925(d), he still would not qualify for that exception because there is no evidence that he was bringing the firearm into Mexico for competition or training. As noted above, in the statement Valdez made at the time of the search of his residence, he stated that he took the pistol into Mexico for his own protection.

█ The Court finds that the exception set forth in § 925(d)(1) would not apply to Valdez's conduct. In order to fall within this exception, the evidence would have to show that Valdez took the firearm into Mexico in connection with competition or training. However, the only evidence on this point— Valdez's statement made at the time of the search of his residence—is that he took the pistol to Mexico for his own protection. There is no evidence that Valdez's importation of the pistol into Mexico had any connection to his claimed status as an "amateur pistol shooter."

### 3. *The Pistol is a "Firearm" as Defined in 26 U.S.C. § 5845(a)*

Valdez argues that 18 U.S.C. § 925(d)(3), which provides an exception to § 922(*l*)'s prohibition on importation of firearms for a firearm "of a type that does not fall within the definition of a firearm as defined in [26 U.S.C. § 5845(a)] and is generally recognized as particularly suitable for or readily adaptable to sporting purposes...," would render his importation of a firearm lawful if committed in the United States. [8] *Reply to*

---

**6.** 18 U.S.C. § 925(d)(1) provides,

(d) The Secretary may authorize a firearm or ammunition to be imported or brought into the United States or any possession thereof if the person importing or bringing in the firearm or ammunition establishes to the satisfaction of the Secretary that the firearm or ammunition—
   (1) is being imported or brought in for scientific or research purposes, or is for use in connection with competition or training pursuant to chapter 401 of title 10.

**7.** This argument is somewhat confused in that it seems to maintain that because Valdez did not obtain permission from Mexican authorities before taking the pistol into Mexico, his act would constitute a crime in the United States, since the United States requires that the Secretary of the Treasury authorize exceptions under § 925(d).

**8.** **18 U.S.C. § 925(d)(3)** provides:

(d) The Secretary may authorize a firearm or ammunition to be imported or brought into the United States or any possession thereof if the person importing or bringing in the firearm or ammunition establishes to the satisfaction of the Secretary that the firearm or ammunition—
   (3) is of a type that does not fall within the definition of a firearm as defined in section 5845(a) of the Internal Revenue Code of 1954 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes, excluding surplus military firearms.
**26 U.S.C. § 5845(a)** defines "firearm" as follows:
(a) The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from

*Government's Response re: Extradition,* at p. 5–6.

Valdez maintains that the only subsection of § 5845(a) that could apply to this case is § 5845(a)(5), which provides that the term "firearm" includes "any other weapon, as described in subsection (e)," [9] and argues that the government has not shown that the pistol he took into Mexico is of a type that falls within the definition provided in § 5845(e). Valdez notes that, for example, the government has not, and cannot, show that Valdez's weapon was "a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell," as provided in § 5845(e). *Id.*

■ Valdez's argument is misguided. As the government notes in response to this argument, the pistol in question falls within the general portion of the definition of "any other weapon" provided in 26 U.S.C. § 5845(e), i.e., "... any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of any explosion." Valdez does not contest that the nine-millimeter pistol is covered by this definition.

#### 4. *Title 26 U.S.C. § 5844 Would Not Apply to Valdez*

The government maintains that 26 U.S.C. § 5844, which makes it a felony to import any firearm into the United States, would render Valdez's conduct a crime if committed

in this country. Valdez argues that § 5844 would not apply to his conduct because it applies only to those who are engaged in the business of importing. Valdez points out that § 5845(1) defines the term "importer" as "any person who is engaged in the business of importing or bringing firearms into the United States," and contends that he "... clearly is not an 'importer' as he is not in the business of importing." *Id.* at pp. 4–5.

■ The Court agrees with Valdez that § 5844 would not apply to him. That statute specifically refers to the person bringing in the firearm as "the importer." Section 5845(1), which sets forth definitions for terms used throughout the Chapter that includes § 5844, defines "importer" as "any person who is engaged in the business of importing or bringing firearms into the United States." Because Valdez is not engaged in the business of importing, his conduct would not be covered by this statute.

#### 5. *The Laws of the United States and Mexico are "Substantially Analogous"*

##### a. *The Parties' Contentions*

Valdez contends that there is no offense under the laws of the United States that is sufficiently analogous to the offense with which he is charged in Mexico to satisfy the dual criminality requirement. With regard to the statutes cited by the government, i.e.,

---

a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun [sic]; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun [sic] or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

9. 26 U.S.C. § 5845(e) provides:

   (e) **Any other weapon.**—The term "any other weapon" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

18 U.S.C. §§ 922(*l*) and 924(a)(1)(C), and 26 U.S.C. § 5844, Valdez maintains that importing a firearm is not an analogous offense to importing a firearm reserved for the exclusive use of the military, stating, "In Mexico, the conduct prohibited is defined by whether or not the firearm at issue is reserved for the exclusive use by the military [sic]. No such law exists in this country which would make that conduct illegal." *Reply to Government's Response re: Extradition,* at p. 6. Valdez argues that in claiming that the U.S. statutes are analogous to the Mexican statute, the government is asking this Court to "disregard the nature of the offense charged" and to "ignore the fact" that the conduct prohibited by the Mexican statute relates specifically to firearms reserved for exclusive use by the military. *Id.* at p. 2.

Prior to the first hearing in this case, the government took the position that because the alleged conduct is a crime in both the United States and Mexico, the dual criminality requirement was met and Valdez's motion to deny the extradition request must be denied. *Government's Response and Opposition to Detainee's Opposition to Extradition Request,* at p. 4. Specifically, the government argued,

> The fact that nine-millimeter pistols are not reserved for military use in the United States is not determinative. Rather, ... the deciding factor is whether the alleged conduct constitutes a crime in both jurisdictions. Because importing a nine-millimeter pistol without proper authorization is a crime in both Mexico and the United States, the dual criminality requirement has been satisfied and Valdez' motion should be denied.

*Id.* at p. 6.

In a subsequent pleading, the government reiterated this argument, asserting that in order to satisfy the dual criminality requirement, " '... [i]t is enough that the conduct involved is criminal in both countries.' " *Government's Response and Opposition to Detainee's Reply to the Government's Response re: Extradition,* at p. 2 (quoting *Russell,* 789 F.2d at 803 (citing *Kelly v. Griffin,* 241 U.S. 6, 14, 36 S.Ct. 487, 60 L.Ed. 861 (1916))).

At the first hearing in this case, the discussion between the Court and counsel focused on how to reconcile the holdings in *Russell* and the other cases relied upon by the government for the proposition that the *only* requirement of the dual criminality doctrine is that the acts alleged constitute a crime in both countries, with the statements made by the Court in *Oen Yin–Choy* that dual criminality requires that the "essential character" of the acts criminalized by the law of each country be the same and that the laws be "substantially analogous." *Oen Yin–Choy,* 858 F.2d at 1404 (citations omitted). At the hearing, the Court observed that if all that is required to satisfy dual criminality is that the act alleged constitute a crime in both countries, then it appeared that Valdez was clearly extraditable. However, if dual criminality also requires that the "essential character" of the acts criminalized by the laws of the two countries be the same and that the laws be "substantially analogous," then this Court would have to address whether the "essence" of Valdez's act is the unauthorized importation of a firearm, or rather, the fact that the firearm is one reserved for exclusive use by the military, and whether 18 U.S.C. § 922(*l*) is "substantially analogous" to the Mexican statute under which Valdez is charged. At the conclusion of the November 13, 1997 hearing, the Court invited further briefing on these issues.

In its *Supplemental Points and Authorities in Support of Extradition Request,* filed prior to the second hearing in this matter, the government modified its position regarding the applicable law, stating,

> The United States on behalf of the Republic of Mexico takes the position that the published case law in the Ninth Circuit has been consistent in holding that if the act or conduct is criminal in both countries, the dual criminality requirement has been met, *provided that the statutes of the countries involved are substantially analogous.* In the instant case, the conduct complained of would be a crime in both countries and the statutes are substantially analogous. Therefore, the Court should find that the

dual criminality requirement has been met and certify the detainee extraditable.

*Id.* at p. 2 (emphasis added).

**b. The "Essence" of the Statutes of Both Countries is a Prohibition of the Unauthorized Importation of Firearms**

Article 84, Section I of the Mexican Federal Law of Firearms and Explosives provides,

An imprisonment penalty of 5 to 30 years shall be imposed and a fine from 20 to 500 days of minimum wage:

I. Whomever illegally brings into the Republic unlicensed firearms, munitions, explosives or any other material for the exclusive use of the Armed Forces *or* that are controlled under this Law, likewise to whomever participates in bringing into the Republic the above.

*Government's Submission of Supplemental Documents in Support of Extradition Request* (emphasis added); *See also,* Formal Request for Extradition.[10]

Title 18 U.S.C. § 922(*l*) provides in relevant part,

(1) Except as provided in section 925(d) of this chapter, it shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition.

The government included in its *Submission of Supplemental Documents* the Declaration of Jorge Arturo Ramirez Travino, an attorney and prosecutor with the Mexican Attorney General's Office, in which Travino states that the Supreme Court of Mexico has held that Article 84, Section I makes it illegal to bring into Mexico unlicensed firearms of any kind, whether or not they are reserved for the exclusive use of the military. In his Declaration, Travino states that Article 4 of the Federal Law of Firearms provides that the Executive Branch of the Union, through the Ministries of the Interior and National Defense "... shall control all the firearms within the country ...," and that a Federal Registry of Firearms is to be maintained for that purpose; that Article 7 requires that firearms "... should be declared before the Ministry of the National Defense in order to register them in the Federal Record of Firearms;" and that Article 8 prohibits possession or bearing of firearms "prohibited by Law," or those reserved for the exclusive use of the Army, Navy and Air Force, except in certain specified cases.

The government argues that because the Mexican Supreme Court has interpreted Article 84, Section I of the Federal Law of Firearms to prohibit the unlicensed importation of *all* firearms, both military and nonmilitary, " ... it is clear that the essence of the offense with which Valdez is charged is the

---

10. In his *Reply to Government's Supplemental Points and Authorities in Support of Extradition Request,* Valdez states that Article 84, Section I of the Mexican Federal Law of Firearms and Explosives has more sections than described in the government's submission of supplemental documents. Attached to this *Reply* as "Exhibit A" was the following text:

ARTICLE 84. —A sentence of from five to thirty years of prison and a fine of from twenty to five hundred days shall be imposed upon:
I. whoever clandestinely introduces into the Republic firearms, ammunition, explosives and materials reserved for exclusive use by the Armed Forces or subject to control pursuant to this law, as well as upon whoever participates in the introduction,
II. Any public official or employee who, being, obligated by his duties to impede said introduction, fails to do so. More-

over, he shall be discharged from his employment or position and be subject to between two and six years of disqualification, and,
III. Whomever acquires the objects to which subparagraph I refers for commercial purposes.
A sentence of from two to eight years of prison shall be imposed upon whoever clandestinely introduces into the Republic firearms not reserved for exclusive use by the Army, Navy and Air Force.
When the responsible party, in the case of the conduct covered by this article and the two preceding articles, is or has been in the public services of some police organization, the sentence shall be increased by up to one third more over the corresponding sentence. (Emphasis added).
The government does not dispute that this is the complete text of Article 84, Section I.

importation, as opposed to the classification of the firearm as one reserved or not reserved for military use." The government goes on to assert that, similarly, the essence of 18 U.S.C. § 922(*l*) is importation of firearms, not the type of firearm involved, and concludes that the two statutes are therefore "substantially analogous." *Government's Supplemental Points and Authorities,* at p. 3.

Valdez points out that Article 84, Section I provides for punishment by a sentence of only two to eight years for weapons that are not reserved for exclusive use by the military, but for a sentence of five to 30 years for weapons that are reserved for military use. Valdez contends that the distinction of being reserved for the military—which does not exist under United States law—is thus an important one under Mexican law, and supports his argument that the Mexican and U.S. statutes are not "substantially analogous."

■ Essentially, Valdez argues that the statutes of the two countries are not "substantially analogous" because Article 84, Section I provides for a greater penalty for offenses involving firearms reserved for exclusive use by the military than for other firearms offenses, and that this difference in penalties renders importation of a firearm reserved for military use qualitatively different from importation of a firearm not so reserved. This Court does not accept the distinction Valdez attempts to draw. The Court agrees with the government that the "essence" of both statutes is a prohibition of the unlawful importation of firearms. As noted above, the Court of Appeals for the Ninth Circuit has held that, "Dual criminality does not require that an offense in a foreign country have an identical counterpart under the laws of the United States," *Bozilov,* 983 F.2d at 142 (quoting *Theron,* 832 F.2d at 496), and that "[E]ach element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States." *Oen Yin–Choy,* 858 F.2d at 1404–05.

### c. *Valdez's Conduct is Extraditable Under the Holding in United States v. Khan*

Valdez relies upon *United States v. Khan,* 993 F.2d 1368 (9th Cir.1993), to support his argument that the laws of the United States and Mexico are not "substantially analogous." In *Khan,* the defendant had participated in a conspiracy to import heroin into the United States, and was charged, along with other defendants, by a federal grand jury in Las Vegas, with conspiring to import heroin, in violation of 21 U.S.C. § 963 (Count II), and using a communication facility, i.e., a telephone, to facilitate the conspiracy, and aiding and abetting, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (Count VIII). Khan was arrested in Pakistan on unrelated charges. The United States requested his extradition based upon the charges in the Las Vegas indictment. Khan was eventually extradited to the United States to face these charges, and was convicted on both counts.

On appeal, Khan contended that under the doctrine of dual criminality, he should not have been prosecuted under 21 U.S.C. § 843, arguing that the act alleged in Count VIII, i.e., using a telephone to facilitate the commission of a drug offense, was not punishable as a crime in Pakistan. Khan conceded that under Pakistani law, drug trafficking conspiracies are criminal acts, and that the lawful use of a telephone could be considered an "overt act" in furtherance of a criminal conspiracy, but maintained that such use of a telephone, standing alone, could not be charged as a separate crime. *Id.* at 1372. The government took the position that as long as the underlying conduct was criminal, the dual criminality requirement was satisfied. *Id.*

The *Khan* Court observed that the doctrine of dual criminality does not require that Pakistan have a provision that "is the exact duplicate of 21 U.S.C. § 843," and that dual criminality could be satisfied even though the names of the crimes and the elements were different in the two countries. However, the Court stated that it had not been presented with a Pakistani crime that " ... is even analogous to" 21 U.S.C. § 843. The Court noted that in cases holding that dual criminality was satisfied, " ... the laws of the two countries were sufficiently analogous to satis-

fy dual criminality." [11] In holding that the dual criminality requirement was not satisfied with respect to Count VIII, the *Khan* Court reiterated that it was not aware of any Pakistani law that is analogous to 21 U.S.C. § 843, and that the Court was therefore not convinced that Khan could be charged and punished in Pakistan for the conduct underlying Count VIII, separate and apart from the conspiracy. *Khan*, 993 F.2d at 1373.

Valdez interprets *Khan* as holding that even though drug trafficking conspiracies are illegal in Pakistan, using a telephone during and in furtherance of the commission of a drug offense is not sufficiently similar to any Pakistani crime to satisfy the dual criminality requirement. He argues that in *Khan*, the Court " ... did not simply look at whether the person to be extradited was engaged in activity which was criminal in both countries, but required that the laws at least be analogous." *Reply to Government's Response*, at p. 4, citing *Khan*, 993 F.2d at 1372–73. Analogizing his situation to that of the defendant in *Khan*, Valdez concludes, "[T]he offense for which Mexico seeks to extradite Mr. Valdez simply does not exist in the United States. Hence the requirement of dual criminality has not been satisfied and Mexico's request to extradite Mr. Valdez for the crime of importing a weapon reserved exclusively for the military should be denied." *Reply to Government's Response* at p. 6.

As noted above, Khan was extradited to the United States and was convicted of both conspiracy to import heroin, in violation of 21 U.S.C. § 963 (Count II), and use of a telephone in furtherance of the conspiracy, in violation of 21 U.S.C. § 843 (Count VIII). In response to Valdez's argument, the government stresses that in reaching its holding, the *Khan* Court stated,

> We are not aware of any Pakistani law that is analogous to 21 U.S.C. § 843(b). Consequently, we are not convinced that Khan could be charged and punished in Pakistan for the conduct underlying Count VIII, *separate and apart from the crime of conspiracy.*

*Government's Supplemental Points and Authorities, at p. 4.* The government makes the point that in *Khan*, the defendant was extradited and convicted for two violations of United States law, but that the conduct underlying the two convictions was prohibited by a single Pakistani statute, i.e., the conspiracy statute. The government notes the statement made by the *Khan* Court that the act of using a telephone in furtherance of a drug conspiracy is not proscribed in Pakistan *separate and apart from the crime of conspiracy*, and argues,

> Even though the conduct would have constituted a crime under the conspiracy charge ... the conduct was not proscribed by any other separate statute. Since Khan was also tried and convicted of the conspiracy charge ... the Court ruled that the same conduct could not support two separate convictions in the United States since the same conduct would not support two separate convictions in Pakistan.

*Id.*

The government concludes,

> In the instant case, the extraditee is sought by Mexico on a single charge. The conduct underlying that charge would have been criminal if committed in the United States. Once in Mexico, the extraditee will not be convicted and sentenced for more

---

11. *Id.* at 1372–73 (citing *Collins*, 259 U.S. at 312, 42 S.Ct. 469 (dual criminality satisfied because Indian offense of "cheating" was analogous to Louisiana offense of "false pretenses")); *Kelly v. Griffin*, 241 U.S. 6, 14, 36 S.Ct. 487, 60 L.Ed. 861 (1916) (dual criminality satisfied though Canadian perjury law did not require that statements be material, while Illinois law required materiality as an element of the offense); *Bozilov*, 983 F.2d at 143 (dual criminality satisfied because defendant could have been charged with conspiracy in the United States if the two countries' positions had been reversed); *Emami*, 834 F.2d at 1450 (dual criminality satisfied because fraud under German Penal Code PP 263 comparable to U.S. crime of mail fraud under 18 U.S.C. § 1341); *Theron*, 832 F.2d at 497 (dual criminality satisfied because South African law, though broader, was analogous to U.S. bank fraud); *Russell*, 789 F.2d at 804 (dual criminality satisfied even though Australian conspiracy law did not require "overt act"); *United States v. Sensi*, 879 F.2d 888, 893 (D.C.Cir.1989) (dual criminality satisfied where, under U.K. law, to commit mail fraud one must succeed in stealing something whereas, under U.S. law, that is not a requirement).

crimes than that for which he should be extradited. Therefore, the concern in *Khan* over convicting and punishing a person for more crimes than fulfilled the dual criminality requirement does not exist in the instant case.

*Id.*

Valdez maintains that the government's interpretation of *Khan* is incorrect. He argues that the decision in *Khan* was not based on the fact that Khan was convicted on more than one count, but rather, on the fact that Pakistan does not have a law proscribing "use of a telephone." Valdez asserts that *Khan* stands for the proposition that in analyzing whether or not dual criminality exists, "[I]t is not the conduct that controls, but the statute." He bases this assertion on the fact that in *Khan*, the use of a telephone in furtherance of a drug conspiracy was punishable under both U.S. and Pakistani law as a violation of the conspiracy laws, but that the Court still found no dual criminality. Valdez states that it was the nature of the U.S. statute that was the controlling factor in the Court's decision, not the conduct involved. He contends that the situation in the present case is analogous, since the United States does not have a law proscribing importation of weapons reserved for the military. *Reply to Government's Supplemental Points and Authorities in Support of Extradition Request,* at p. 3–4.

As stated above, this Court does not agree with Valdez's contention that the conduct prohibited by the Mexican statute is "defined" by whether or not the firearm at issue is reserved for use by the military. *Reply to Government's Response re: Extradition* at p. 6. Rather, the Court finds that the "essence" of the conduct prohibited by the statute is the unauthorized importation of a firearm. Because 18 U.S.C. § 922(*l*) also prohibits the unauthorized importation of a firearm, Val-

dez's analysis of *Khan* would not apply to the facts of this case.

Further, this Court disagrees with Valdez's interpretation of *Khan.* The *Khan* Court did not hold that the act of using a telephone in furtherance of a drug conspiracy, although criminal, was not extraditable because there was no corresponding criminal statute in Pakistan. In its Opinion, the *Khan* Court noted that in his appeal, Khan conceded that such use of a telephone could be considered an "overt act" in furtherance of a conspiracy, and argued that such use of a telephone could not be charged *as a separate crime from the conspiracy. Khan,* 993 F.2d at 1372 *(emphasis added ).* This Court interprets *Khan* as holding that Khan was not extraditable for the offense of using a telephone in furtherance of a drug conspiracy *as an offense separate from the drug conspiracy charge, on which he had also been extradited.* In this Court's view, the significance of the holding in *Khan* is that because Pakistan had no statute analogous to 21 U.S.C. § 843, the act underlying that offense would be extraditable only under the general conspiracy statute.[12]

Valdez's assertion that *Khan* stands for the proposition that, "[I]t is not the conduct that controls, but the statute," is contrary to virtually all authority on the subject of the requirements of the dual criminality doctrine. *See, e.g., United States v. Sensi,* 879 F.2d 888, 894 (D.C.Cir.1989) (the Restatement of Foreign Relations Law "makes clear that the focus is on the acts of the defendant, not on the legal doctrines of the country requesting extradition").

#### d. *The Offense Charged is Extraditable*

The Court of Appeals for the Ninth Circuit has held that in order to satisfy the dual criminality requirement, the "essential character" of the acts criminalized by the law of

---

**12.** In this Court's view, if Khan had been charged in the United States only with the unlawful use of the telephone, and his extradition had been sought only on that charge, he would have been properly extradited under the holding in *Khan,* since the use of the telephone in furtherance of the drug conspiracy would be deemed an overt act in furtherance of the conspiracy, and therefore extraditable under Paki-

stan's conspiracy statute. The dual criminality requirement would be satisfied under this scenario because the "essential character" of the acts criminalized by the laws of both countries would be the same, i.e., participation in a drug smuggling conspiracy, and the laws of the two countries would be sufficiently analogous in that they both criminalize such activity.

each country must be the same, and the laws of the two countries must be "substantially analogous." *Oen Yin–Choy,* 858 F.2d at 1404 (citing *Theron,* 832 F.2d at 496 (quoting *Wright v. Henkel,* 190 U.S. 40, 58, 23 S.Ct. 781, 47 L.Ed. 948 (1903))). The question here is "... how much congruity between the statutes of the requested and requesting nations dual criminality requires." *Peters v. Egnor,* 888 F.2d 713, 719 (10th Cir.1989).

In answering this question, the Court of Appeals for the Tenth Circuit held,

> Statutes are substantially analogous when they "punish conduct falling within the broad scope" of the same "generally recognized crime." Differences in instrumentalities or purposes are not important, so long as the statutes relate to the same general offense. In other words, when "the laws of both the requesting and the requested party appear to be directed to the same basic evil," the statutes are substantially analogous, and can form the basis of dual criminality.

*Id.* (citations omitted).

The Court of Appeals for the Ninth Circuit addressed this question recently in *Clarey v. Gregg,* 138 F.3d 764 (9th Cir.1998). In that case, Clarey challenged his extradition from the United States to Mexico on murder charges, contending that his extradition would violate the doctrine of dual criminality because the homicide statute under which he was charged in Mexico criminalized a much broader range of conduct than the United States felony murder statute. Clarey argued that the two statutes were not "substantially analogous" because the United States statute requires that the homicide be perpetrated during the commission of a violent felony, while the Mexican law requires only that a homicide occur. *Id.*

In rejecting Clarey's argument, the Court clarified the degree of similarity that must exist between the laws of two countries to satisfy the dual criminality requirement, stating,

> Clarey's challenge overstates the degree to which the applicable criminal laws of the two countries must be "substantially analogous." Although some analogy is required, differences between statutes aimed at the

same category of conduct do not defeat dual criminality.

*Id.* at *2 (citing *Khan,* 993 F.2d at 1372 and *Theron,* 832 F.2d at 497.)

The *Clarey* Court observed that both the Mexican homicide statute and the United States statute could be used to punish the acts with which Clarey was charged, i.e., causing a death by a beating during a robbery, and held that the laws were analogous because, "... they both punish acts of the same general character—the taking of another's life." *Id.* The Court added, "[N]o more is required." *Id.* (citing *Oen Yin–Choy,* 858 F.2d at 1404–05 & n. 2.)

■ Applying the standard for dual criminality set forth in *Clarey,* this Court concludes that Article 84, Section I of the Mexican Federal Law on Firearms and Explosives, and 18 U.S.C. § 922(*l*) are "aimed at the same category of conduct," i.e., unauthorized importation of firearms. The Court finds that the statutes are "substantially analogous," because they punish acts of the same general character, and both statutes can be used to punish the act with which Valdez is charged, i.e., bringing a firearm into the country without authorization.

There is some logic underlying Valdez's argument that the statutes of the two countries are not "substantially analogous." This Court recognizes that there is no United States statute that specifically criminalizes the importation of a firearm reserved for the exclusive use of the military, and that Mexican law provides for more severe penalties for crimes involving firearms reserved for military use than for crimes involving other firearms, while United States law makes no such distinction. However, finding no dual criminality on that basis would, in this Court's view, be overly technical, and would thus be antithetic to the doctrine that the provisions of treaties between the United States and other countries are to be liberally construed.

In *Factor v. Laubenheimer,* 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933), the Supreme Court stated,

Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them. For that reason if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.

*Id.* at 293–94, 54 S.Ct. 191. *See also, Valentine v. United States,* 299 U.S. 5,10, 57 S.Ct. 100, 81 L.Ed. 5 (1936) ("It is a familiar rule that the obligations of treaties should be liberally construed so as to give effect to the apparent intention of the parties."); *Wright v. Henkel,* 190 U.S. at 57, 23 S.Ct. 781.

With respect to extradition treaties in particular, the *Factor* Court held that such treaties should be "construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Factor,* 290 U.S. at 298, 54 S.Ct. 191. Building on this ruling, courts have specifically held that a flexible standard should be used in determining whether or not dual criminality exists in a given case. In *McElvy v. Civiletti,* 523 F.Supp. 42, 48 (S.D.Fla.1981), the Court found that the offenses allegedly committed by the petitioners were "substantially analogous" to offenses under United States law, despite the fact that the statutes prohibiting the conduct were dissimilar in a number of respects. In reaching this conclusion, the *McElvy* Court held, "[C]ourts must approach challenges to extradition with a view towards finding the offenses within the treaty." *Id.*

### III.

#### Findings and Certification

The Court makes the following findings:

1. There is a valid extradition treaty between the United States of America and the Republic of Mexico;

2. Gabriel Alfredo Valdez–Mainero is the person named in the arrest warrant issued by the Fourth District Court for the State of Baja, California, Mexico on February 4, 1997;

3. The offense with which Valdez is charged is listed in the Appendix to the Treaty at item 19, and is punishable in both the United States and Mexico by incarceration for a term the maximum of which is greater than one year;

4. Article 84, Section I of the Mexican Federal Law on Firearms and Explosives and 18 U.S.C. §§ 922($l$) and 924(a)(1)(C) are substantially analogous;

5. There is probable cause to believe that Valdez committed the offense charged;[13] and

6. The documents required have been presented in accordance with the laws of the United States of America and the Treaty, and have been translated and duly authenticated by United States of America consul.

The Court will certify the above findings, and the transcripts of the extradition hearings held in this case, to the Secretary of State, pursuant to 18 U.S.C. § 3184.

### IV.

#### Order of Commitment

The Court orders that Gabriel Alfredo Valdez–Mainero be committed to custody, as required under 18 U.S.C. § 3184, and that he remain in such custody until he is surrendered to the Republic of Mexico, or until further order of the Secretary of State.

**IT IS SO ORDERED.**

---

**13.** Valdez does not contest that there is sufficient evidence to sustain the charge under the provisions of the Treaty.